# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-80290-Rosenberg/Reinhart

JONATHAN MILLER,

            Plaintiff,

   v.

JOYCE EISEN, and
SCOTT MILLER, as Trustee of the Sydney
Miller Trust,

            Defendants.



FILED BY _____ cos _____ D.C.

SEP 28 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

### CERTIFICATION OF JONATHAN MILLER

Plaintiff Jonathan Miller, being of full age, hereby certifies as follows:

1.     I am the Plaintiff in this Matter and make this Certification in support of my Rule 41(a)(2) motion for voluntary dismissal.

2.     True and correct copies of the following documents are annexed hereto:

| | |
|---|---|
| Exh. 1 | January 2020 Trust Amendment |
| Exh. 2 | Eisen interrogatory responses (*abridged*) |
| Exh. 3 | 2020 annual summary – Eisen revocable trust |
| Exh. 4 | Emails, 8/21/23 — 8/23/23 |
| Exh. 5 | Eisen interrogatories, 8/28/23 |
| Exh. 6 | Eisen document requests, 8/28/23 |
| Exh. 7 | Eisen requests for admission, 8/28/23 |
| Exh. 8 | Eisen settlement demand, 8/29/23 |
| Exh. 9 | Emails, 8/29/23 — 9/1/23 |
| Exh. 10 | Proposed Rule 41 stipulation (*draft*) |
| Exh. 11 | Emails, 9/13/23 |

3.      I am the eldest child of the late Sydney Miller ("Decedent") and brought this Action to challenge a January 24, 2020 amendment to my father's trust agreement, granting his former girlfriend, Defendant Eisen, a $420,000 beneficial interest in the Trust. *See* Exh. 1.

4.      A primary basis for that challenge is my understanding that Ms. Eisen procured the Amendment by fraudulently concealing her wealth from my father and others, claiming to be getting by on only a limited income, and leading him to believe that she would need financial support upon his passing.

5.      Over the years, there were countless times that my father referred to Ms. Eisen as being "impoverished." This was my father's idiosyncratic and hyperbolic way of saying that Ms. Eisen did not have enough money to support her lifestyle — *not* that she was literally destitute.

6.      Ms. Eisen stated as much to me as well, describing herself as living on a limited income, which I understood to be monthly alimony from her ex-husband and Social Security retirement benefits.

7.      Ms. Eisen has confirmed much of this, stating under oath that my father made the Amendment because he thought that he had more money than her and that she would need financial support upon his passing:

> [B]ased on their discussions, Eisen and [Sydney] Miller's understanding was that [Sydney] Miller had a greater net worth than Eisen. [Sydney] Miller was not concerned that he would be able to maintain his lifestyle if Eisen predeceased him but was concerned about Eisen being taken care of if he predeceased her.

*See* Exh. 2, Interrogatory Response #14.

8.      Ms. Eisen has further confirmed that she herself made no monetary provision for my father in her own estate planning because she wanted to keep her money within her family. *Id.*

9.      In or around May 2021 I came to understand that Ms. Eisen was actually quite wealthy. This occurred when she left one of her own trust's financial statements out in plain sight for one of my brothers to find. That statement is an annual financial summary, showing that in 2020 Ms. Eisen's trust engaged in over $10 million in financial transactions. *See* Exh. 3.

10.     This Exhibit does not show the account balance, but based on the large dollar value of transactions in 2020 I estimate that Ms. Eisen's trust had anywhere between $5 million and $20 million in assets around the time of the January 2020 Amendment, and possibly more than that.[1] This estimate, which is several times greater than my father's net worth while he was alive, does not account for other trust accounts nor the value of Ms. Eisen's home and any other real estate.

11.     When we discovered this, my siblings and I were absolutely shocked. Until that moment, we were under the understanding that Ms. Eisen was living on limited income, i.e. monthly alimony from her ex-husband plus Social Security benefits, and that our father had been paying to support their shared lifestyle because Ms. Eisen was financially unable to contribute — as my father frequently told us.

12.     Upon learning that Ms. Eisen was actually concealing her very substantial wealth, we decided not to confront our father with this startling information. At that time, my father was frail, disabled and terminally ill with end-stage renal disease, and we prioritized his care and comfort — especially because, as a rule, my father was afraid of confronting Ms. Eisen about anything, which he expressed by stating he was afraid that she would "throw me out."

---

[1] The total dollar amount of annual transactions reflects the purchase and sale of investments, not the account balance. For example, a $50 million account that bought or sold $10 million in assets would show $10 million in annual transactions. Conversely, if the account held a $2.5 million CD that matured quarterly, that would also show $10 million in annual transactions.

13.     Nevertheless, this new information about Ms. Eisen's great wealth was shocking, and confirmed to me that the January 2020 Amendment, granting Ms. Eisen a $420,000 beneficial interest in my father's Trust, served no purpose but to gratify Ms. Eisen's monetary demands.

14.     An eighty-year-old retiree with $5-$20 million in the bank surely does not need an additional $420,000 to scrape by. If my father thought that Ms. Eisen needed $420,000 for her financial support upon his passing, it can only have been because Ms. Eisen concealed her great wealth from him and misled him to believe that she had limited assets.

15.     This information, concerning Ms. Eisen's concealment of her great wealth from my father at the time of the January 2020 Amendment, lays at the heart of my decision to challenge the Amendment in this Court.

16.     My initial discovery demands focused primarily on two issues: confirming that, as suspected, Ms. Eisen did not provide my father with a corresponding monetary gift in her own estate planning, and discovering Ms. Eisen's net worth at the time of the January 2020 Amendment.

17.     Ms. Eisen objected to these requests and refused to respond to them, compelling me to raise the issue with the Court (Reinhart, J.). *See* ECF #21.

18.     Notwithstanding my explanations why discovery relating to Ms. Eisen's net worth was central to my case, i.e. that Ms. Eisen deceived my father into believing that she would need financial support from his estate, when in fact she was quite wealthy, Ms. Eisen convinced Judge Reinhart that this information was not proportional to the needs of my case. *See* ECF #23 (text order).

19.     Judge Reinhart based his ruling on Ms. Eisen's stipulation that she had more than $1 million in assets in January 2020. I explained that this stipulation is insufficient, because a

$420,000 testamentary gift might be financially significant to someone with $1 million — i.e. it would increase their assets by forty-two percent — but that same $420,000 would not be a significant financial benefit to someone with between $5 million and $20 million in assets. First, because such a gift would increase the recipient's net worth only minimally, i.e. somewhere between two and eight percent. Second — and more importantly — because an eighty year old retiree with $5 to $20 million in assets does not reasonably need an extra $420,000 to scrape by.

20.     Judge Reinhart's ruling is fatal to my ability to prosecute this case. Without disclosure of Ms. Eisen's contemporaneous assets I cannot demonstrate that my father's testamentary intention of ensuring that Ms. Eisen would have adequate financial support upon his passing, was based on Ms. Eisen's fraudulent concealment of her wealth.

21.     Ironically, Ms. Eisen concealed her wealth from my father during the entire course of their relationship, and has now been permitted to continue to conceal her wealth even though it is central to this lawsuit.[2]

22.     Immediately after Judge Reinhart's ruling I discussed the situation with the Trustee, Scott Miller, and proposed to voluntarily dismiss this matter with prejudice, together with mutual general releases.

23.     The Trustee agreed and relayed that proposal to Ms. Eisen on August 21st. *See* Exh. 4.

24.     Ms. Eisen did not agree to my proposed voluntary dismissal, and stated that she was "preparing a counteroffer." *See id.*

---

[2] Judge Reinhart did order Ms. Eisen to disclose the sources and amount of her monthly income from July 2019 through January 2020. *See* ECF #23. To date, Ms. Eisen has not complied.

25.     On August 28th Ms. Eisen served incredibly burdensome and disproportional discovery demands: twenty-four interrogatories, ninety requests for production of documents, and eighty-six requests for admission. *See* Exhs. 5-7.

26.     On August 29th, Ms. Eisen demanded, in addition to my offer to voluntarily dismiss this action, $110,000 in attorney's fees and a full trust accounting. *See* Exh. 8.

27.     Ms. Eisen's $110,000 fee demand is facially exorbitant. Little has occurred in this case. Ms. Eisen answered the complaint, provided initial disclosures, and served objections and responses to my initial discovery demands (fourteen interrogatories and sixteen requests for documents).

28.     Ms. Eisen's demand for a full trust accounting is likewise harassing. Her interest in the Trust is limited to the $420,000 beneficial interest, and she already knows that this money has been sequestered in a separate account since before this lawsuit was filed. A formal accounting would serve no purpose but to burden the Trust and cause it to incur completely unnecessary expenses.

29.     On August 29th, I informed Ms. Eisen that I intended to move for voluntary dismissal under Rule 41 and asked whether she consented (as I believe the court rules require). *See* Exh. 9.

30.     In response, Ms. Eisen requested that I prepare a proposed stipulation of voluntary dismissal under Rule 41. I did so. *See* Exhs. 9-10.

31.     On September 1st, Ms. Eisen stated that she did not consent to the proposed Rule 41 stipulation of dismissal, and that she would review the options and get back to me the following week. *See* Exh. 9.

32.     On September 13th, Ms. Eisen stated that she could not make an informed decision about my motion to voluntarily dismiss this action without first receiving a full trust

accounting. When asked to explain why a full trust accounting was a condition precedent for her making an informed decision about my motion, Ms. Eisen declined to do so. *See* Exh. 11.

33.    As stated, I cannot prosecute my case without basic discovery about Ms. Eisen's true wealth at the time that my father amended his trust agreement. Without this basic information — well within the liberal standards of Rule 26 discovery — I cannot demonstrate that my father's belief, that a $420,000 gift was necessary to support Ms. Eisen after he passed away, was based on Ms. Eisen's fraudulent concealment of her very substantial wealth.

34.    In light of the foregoing, I respectfully request to voluntarily dismiss my claims without prejudice and without fees or costs.

Respectfully submitted,

Date: September 27, 2023

Jonathan Miller, *pro se*
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. (609) 955-1226
Fax (609) 964-1026
Email: jonathan.miller@lawyer.com

# Exhibit 1

FIRST AMENDMENT TO

SYDNEY MILLER REVOCABLE TRUST AGREEMENT

THIS FIRST AMENDMENT, dated this *24th* day of *January*, 2020,
to the SYDNEY MILLER REVOCABLE TRUST AGREEMENT, dated the 12th day of October,
2005, by and between SYDNEY MILLER, of Boca Raton, Florida, hereinafter called Settlor, and
SYDNEY MILLER, of Boca Raton, Florida, hereinafter called Trustee. (The term "Trustee" shall
mean the Trustee or Trustees from time to time qualified and acting.)

WHEREAS, under Article I of said Trust Agreement, Settlor reserved the right to alter,
amend or revoke said Trust Agreement at any time and from time to time, either in whole or in part.

NOW THEREFORE, in the exercise of said power, Settlor does hereby amend the said Trust
Agreement as follows:

Settlor hereby deletes Article V in its entirety, and inserts in lieu thereof the following:

"ARTICLE V - DISTRIBUTION OF TRUST UPON DEATH OF SETTLOR

Upon the death of the Settlor, the Successor Trustee shall distribute the trust as follows:

1.      The sum of FOUR HUNDRED AND TWENTY THOUSAND DOLLARS
($420,000.00) shall be distributed outright and free of trust to JOYCE EISEN, if then living.

2.      The Trustee is authorized and directed to retain in the trust Settlor's residence
commonly known and numbered as 134 Lake Shore Drive West, Rock Hill, New York 12775, for

-1-

REDGRAVE & ROSENTHAL LLP



the benefit of JOYCE EISEN, for a period not to exceed one (1) year following the date of Settlor's death, as follows:

        a.      During the period that said property is so held for the use and occupancy of JOYCE EISEN, she shall be permitted to use and occupy same free of any rent. All water, electric and cable expenses shall be paid by JOYCE EISEN.

        b.      Upon the sale of said property, or upon one (1) year following the date of Settlor's death, or upon JOYCE EISEN advising the Trustee that she no longer desires to occupy said residence as a home (by notification to the Trustee in writing subscribed by JOYCE EISEN and acknowledged in like manner as is required for a deed to be recorded in the State of Florida), or upon the death of JOYCE EISEN, whichever shall be the first to occur, the trust shall terminate as to JOYCE EISEN and said residence shall be distributed pursuant to the provisions of Paragraph 3. of Article V of this trust agreement.

     3.      The balance of the trust estate shall be distributed outright and free of trust in equal shares as follows:

        a.      One (1) share to the Settlor's son, JONATHAN R. MILLER, outright and free of trust, if living, otherwise to his issue, in equal shares, per stirpes.

        b.      One (1) share to the Settlor's son, SCOTT A. MILLER, outright and free of trust, if living, otherwise to his issue, in equal shares, per stirpes.

        c.      One (1) share to the Settlor's son, DOUGLAS S. MILLER, outright and free of trust, if living, otherwise to his issue, in equal shares, per stirpes.

        d.      One (1) share to the Settlor's daughter, JACQUELINE L. FELDBAUM, outright and free of trust, if living, otherwise to her issue, in equal shares, per stirpes."

-2-

REDGRAVE & ROSENTHAL LLP

In all other respects, Settlor ratifies and confirms all the provisions of said Trust Agreement dated October 12, 2005.

IN WITNESS WHEREOF, SYDNEY MILLER has signed this Instrument as Settlor, and SYDNEY MILLER has signed this Instrument as Trustee, to evidence his acceptance of the First Amendment to Revocable Trust Agreement.

Signed, sealed and delivered
in the presence of:

_____      _____
_____      SYDNEY MILLER, Settlor

STATE OF FLORIDA
COUNTY OF PALM BEACH

WE, SYDNEY MILLER, _____Teresa Atyeo_____ and

_____Cami Lombardo_____, the Settlor and the witnesses, respectively,

whose names are signed to the attached or foregoing instrument, being first duly sworn, do hereby

declare to the undersigned officer that the Settlor signed the instrument as his First Amendment to

Revocable Trust Agreement, that he signed, and that each of the witnesses, in the presence of the

Settlor, at his request, and in the presence of each other, signed the First Amendment to Revocable

Trust Agreement as a witness.

_____
SYDNEY MILLER, Settlor

_____
Witness

_____
Witness

The foregoing instrument was subscribed, acknowledged and sworn to before me, by means

of (✓) physical presence or ( ) online notarization, by SYDNEY MILLER, the Settlor, as indicated

below:

(✓) who is personally known to me;
( ) who produced _____ as identification;

and by _____Teresa Atyeo_____, a witness, as indicated below:

(✓) who is personally known to me;
( ) who produced _____ as identification;

and by _____Cami Lombardo_____, a witness, and as indicated below:

(✓) who is personally known to me;
( ) who produced _____ as identification;

on this 24 day of January, 2020.

_____
Notary Public

-4-
REDGRAVE & ROSENTHAL LLP

AARON REDGRAVE
Commission # GG 311922
Expires March 14, 2023
Bonded Thru Troy Fain Insurance 800-385-7019

ACCEPTANCE BY TRUSTEE

The undersigned hereby accepts the Trust imposed by the foregoing First Amendment to

Revocable Trust Agreement, and agrees to serve as Trustee upon the terms and conditions therein

set forth.

WITNESSES:

_____          _____
                                         SYDNEY MILLER, Trustee
_____


STATE OF FLORIDA
COUNTY OF PALM BEACH

        The foregoing instrument was acknowledged before me, by means of (✓) physical presence

or ( ) online notarization, by SYDNEY MILLER, as indicated below:

(✓) who is personally known to me;
        ( ) who produced _____ as identification;

on this 24 day of _____January_____, 2020.

                                         _____
                                         Notary Public

AARON REDGRAVE
Commission # GG 311922
Expires March 14, 2023
Bonded Thru Troy Fain Insurance 800-385-7019

ARR/cll
G:\Miller, Sydney (DELRAY)\Miller, Sydney (EP)\1st Amendment.wpd

-5-
REDGRAVE & ROSENTHAL LLP

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-80290-Rosenberg/Reinhart

JONATHAN MILLER,

Plaintiff,

v.

JOYCE EISEN, and
SCOTT MILLER, as Trustee of the
Sydney Miller Trust,

Defendants.

## DEFENDANT JOYCE EISEN'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Joyce Eisen, individually and as a beneficiary of the Sydney Miller Revocable Trust Agreement dated October 12, 2005, as subsequently amended ("Trust"), by and through undersigned counsel, hereby serves her responses to Plaintiff Jonathan Miller's first set of interrogatories as follows:



1

3.  Describe your sources of income and the approximate monthly amount thereof, between January 2019 through January 2020.

    **Response:** Eisen objects to the request to describe the approximate monthly amount of income between January 2019 through 2020 as not relevant and disproportionate to the needs of the case, as well as on the ground of Joyce's Constitutional right to Privacy under the U.S. Constitution and greater protection under the Florida Constitution. *See Winfield v. Division of Pari-Mutuel Wagering, Dept. of Business Regulation*, 477 So. 2d 544 (Fla. 1985). Plaintiff's Complaint alleges that Eisen's interest in the Trust is invalid because she allegedly concealed that she was "wealthy," and convinced Sydney Miller that she was "impoverished." (Compl. ¶¶ 3, 37, 64, 90(b)). Plaintiff further averred that on information and belief, at all times relevant, Eisen had more than $1 million in assets. (Compl. ¶¶ 68, 90(a)). Eisen is willing to stipulate for purposes of this case that during the period of January 2019 through January 2020, that she was not "impoverished" and had assets valuing more than One Million Dollars. Therefore, the question of whether Eisen was "impoverished" – *i.e.*, reduced to poverty – as alleged would be established and not at issue. The amount of Eisen's monthly income during 2019 and 2020 will not make any fact of consequence in determining this action – in which Plaintiff alleges Eisen obtained an amendment of a trust agreement through fraud and duress – more or less probable. Moreover, any tenuous relevance of Eisen's monthly income would be substantially outweighed by Eisen's constitutional right to privacy, and therefore disproportionate to the needs of the case. The stipulation and other evidence will provide Plaintiff sufficient information for Plaintiff to

7

.g packet.pdf

Case 9:23-cv-80290-RLR   Document 26   Entered on FLSD Docket 09/28/2023   Page 17 of 84   file:///C:/Users/Dan/Downloads/filing%20packet.pdf

present their theory of the case and the Court with the ability to decide whether the 2020 Amendment was procured by fraud at the hand of Eisen.

As to the remaining part of the interrogatory, Eisen's sources of income during the period of January 2019 through January 2020, Eisen responds that her sources of income were the following:

(a) alimony from the dissolution of a prior marriage;

(b) Social Security retirement benefits;

(c) a monthly payment pursuant to an agreement with Eisen's nephew in relation to Eisen's brother's estate and trust; and

(d) income from personal investments.



8



12. Identify each trust in which you hold a direct or indirect beneficial interest (other than the Trust implicated in this dispute), describe your interest therein, and provide the name, address and telephone number of the trustee(s).

       **Response:** Eisen objects to the request as not relevant and disproportionate to the needs of the case, as well as on the ground of Joyce's Constitutional right to Privacy under the U.S. Constitution and greater protection under the Florida Constitution. *See Winfield v. Division of Pari-Mutuel Wagering, Dept. of Business Regulation,* 477 So. 2d 544 (Fla. 1985). The requested information regarding any trust in which Eisen holds an interest will

15

not make any fact of consequence in determining this action – in wi.

Eisen obtained an amendment of a trust agreement through fraud and dures.

probable. Moreover, any tenuous relevance, if any, of the requested informatio.

substantially outweighed by Eisen's constitutional right to privacy, and the.

disproportionate to the needs of the case.

13. Identify all real property in which you hold a direct or indirect ownership interest, describe your interest therein and the address thereof.

**Response:** Eisen objects to the request as not relevant and disproportionate to the needs of the case, as well as on the ground of Joyce's Constitutional right to Privacy under the U.S. Constitution and greater protection under the Florida Constitution. *See Winfield v. Division of Pari-Mutuel Wagering, Dept. of Business Regulation*, 477 So. 2d 544 (Fla. 1985). The requested information regarding any real property in which Eisen holds an interest will not make any fact of consequence in determining this action – in which Plaintiff alleges Eisen obtained an amendment of a trust agreement through fraud and duress – more or less probable. Moreover, any tenuous relevance, if any, of the requested information would be substantially outweighed by Eisen's constitutional right to privacy, and therefore disproportionate to the needs of the case.

14. Describe in detail why you did not make any provision for Sydney Miller in your estate planning at any time between 2004 and July 15, 2022.

**Response:** It is not true that Eisen did not make any provision for Miller. Eisen last amended her estate plan in 2016. In 2016, Miller and Eisen each executed a document indicating their testamentary wish that the other be given use of their respective homes in the event of their death. Eisen's recollection is that in her document, Miller was given the right to use her apartment for life if she predeceased him. Eisen's children and Miller had

16

a good relationship and Eisen believed her children would honor her wish. Miller had a copy of the document that Eisen executed in 2016. Eisen does not have a copy of that document. While Eisen wanted Miller to have use of her home if she predeceased him and had no concern about her children honoring that wish, the rest of Eisen's assets in which she had a vested interest were inherited from her mother. Therefore, Eisen wanted her children to be the beneficiaries of those assets after her death. Additionally, based on their discussions, Eisen and Miller's understanding was that Miller had a greater net worth than Eisen. Miller was not concerned that he would be able to maintain his lifestyle if Eisen predeceased him but was concerned about Eisen being taken care of if he predeceased her. Though it was not a concrete thought or plan, it seems it was generally expected that Eisen would likely outlive Miller since Miller was 12 years older than Eisen, Eisen's mother lived to be 102 years old, and Eisen continued to remain active and healthy when Miller's kidneys began failing.

## <u>VERIFICATION</u>

I, Joyce Eisen, state that I have read Plaintiff Jonathan Miller's First Set of Interrogatories and my answers to those interrogatories, which are true to the best of my knowledge, information, and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated: This 7th day of July , 2023.

_Joyce Eisen_
Joyce Eisen, Defendant

STATE OF FLORIDA
COUNTY OF Palm Beach

The foregoing instrument was acknowledged before me by means of ☒ physical presence ☐ online notarization, this 7th day of July , 20 23 by Joyce Eisen (Name of Person Acknowledging).

(Seal)



_____
Signature of Notary Public

Ludmilla Ygberg Shah
Print, Type or Stamp Name of Notary

Personally Known: ____
OR Produced Identification: X
Type of Identification Produced: FL DRL LC

LUDMILLA YGBERG SHAH
Notary Public, State of Florida
Commission# HH 300790
My comm. expires Sept. 17, 2026

18

Dated: July _7_, 2023

Respectfully submitted,

*/s/ Elsa B. Van Gorp*
Elsa B. Van Gorp, Esquire
Florida Bar No.: 120527
Roy Taub, Esquire
Florida Bar No.: 116263
Greenspoon Marder, LLP
*Attorneys for Joyce Eisen*
200 E. Broward Blvd
Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 491-1120
Email: elsa.vangorp@gmlaw.com
Email: roy.taub@gmlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this _7th_ day of July 2023, a true and correct copy of DEFENDANT JOYCE EISEN'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES was served via email to Plaintiff Jonathan Miller, Esq., 100 Overlook Center, 2nd Floor, Princeton, New Jersey 08540, via <u>Jonathan.miller@lawyer.com</u>.

GREENSPOON MARDER, LLP

*/s/ Elsa B. Van Gorp*
Elsa B. Van Gorp, Esquire

9/28/2023, 10:22 AM

# Exhibit 3



II         AT         T         NDER IDENTIFIED ABOVE AND DELETE
T          MAIL AND ANY COPIES FROM YOUR SYSTEM.

View more

**charles SCHWAB**

Schwab One® T     count of
JOYCE NORTON EISEN TTEE
THE JOYCE EISEN REVOCABLE TRUS
U/A DTD 04/11/2013

Account Number
      4854

TAX YEAR 2020
YEAR-END SUMMARY

Date Prepared: February 18, 2021

**YEAR-END SUMMARY INFORMATION IS NOT PROVIDED TO THE IRS.**
The information in this and all subsequent sections is not provided to the IRS by Charles Schwab. It is provided to you as additional tax reporting information you may need to complete your tax return.

**Realized Gain or (Loss) Summary**

**Total Realized Gain or (Loss)**

| Description | | Total Proceeds | (-)Cost Basis | (+)(Wash Sale Loss Disallowed) | (=)Realized Gain or (Loss) |
|---|---|---|---|---|---|
| Total Short-Term Realized Gain or (Loss) (Cost basis is reported to the IRS. Report on Form 8949, Part I, with Box A checked.) | $ | REDACTED | REDACTED | REDACTED | REDACTED |
| Total Short-Term Realized Gain or (Loss) (Cost basis is available but not reported to the IRS. Report on Form 8949, Part I, with Box B checked.) | $ | | | | |
| Total Short-Term Realized Gain or (Loss) | $ | | | | |

**charles SCHWAB**

**TAX YEAR 2020**
**YEAR-END SUMMARY**

JOYCE NORTON EISEN TTEE
THE JOYCE EISEN REVOCABLE TRUS
U/A DTD 04/11/2013

Number
4854

**Date Prepared: February 202**

## YEAR-END SUMMARY INFORMATION IS NOT PROVIDED TO THE IRS.

The information in this and all subsequent sections is not provided to the IRS by Charles Schwab. It is provided to you as additional tax reporting information you may need to complete your return.

## Realized Gain or (Loss) Summary

### Total Realized Gain or (Loss)

| Description | | Total Proceeds | (-)Cost Basis | (+)Wash Sale Loss Disallowed | (+)Realiz Gain or Lo |
|---|---|---|---|---|---|
| Total Short-Term Realized Gain or (Loss) *(Cost basis is reported to the IRS. Report on Form 8949, Part I, with Box A checked.)* | $ | | | | |
| Total Short-Term Realized Gain or (Loss) *(Cost basis is available but not reported to the IRS. Report on Form 8949, Part I, with Box B checked.)* | $ | | | | |
| Total Short-Term Realized Gain or (Loss) | $ | | | | |
| Total Long-Term Realized Gain or (Loss) *(Cost basis is reported to the IRS. Report on Form 8949, Part II, with Box D checked.)* | $ | | | | |
| Total Long-Term Realized Gain or (Loss) *(Cost basis is available but not reported to the IRS. Report on Form 8949, Part II, with Box E checked.)* | $ | | | | |
| Total Long-Term Realized Gain or (Loss) *(Cost basis is missing and not reported to the IRS. Report on Form 8949, Part II, with Box E checked.)* | $ | | | | |
| Total Long-Term Realized Gain or (Loss) | $ | | | | |
| **TOTAL REALIZED GAIN OR (LOSS)** | $ | | | | |



IMMEDIATELY TO THE SENDER IDENTIFIED ABOVE AND DELETE
THIS E-MAIL AND ANY COPIES FROM YOUR SYSTEM.

View more

ent from Joyce's phone



file:///C:/Users/Dan/Downloads/filing%20packet.pdf

# Exhibit 4

**jonathan.miller@lawyer.com**

| | |
|---|---|
| **From:** | Scott Miller <scott@samlawnyc.com> |
| **Sent:** | Monday, August 28, 2023 2:02 PM |
| **To:** | Jonathan Miller |
| **Subject:** | Fwd: Miller v. Eisen [IMAN-ACTIVE.FID15840128] |

# Forwarded Conversation
## Subject: RE: Miller v. Eisen [IMAN-ACTIVE.FID15840128]
------------------------

From: **Elsa Van Gorp** <Elsa.VanGorp@gmlaw.com>
Date: Wed, Aug 23, 2023 at 10:20 AM
To: Scott Miller <scott@samlawnyc.com>
Cc: {F15840128}.Active@gmlaw.imanage.work <{F15840128}.Active@gmlaw.imanage.work>

Hello Scott,


We are preparing a counteroffer.


Take care,

Elsa




Elsa Van Gorp, Esquire

Litigation Associate - Wills, Trusts & Estates Practice Group

600 Brickell Ave, Suite 3600

Miami, Florida 33131

Brickell: (305) 789-2770

Fort Lauderdale: (954) 491-1120

Direct: (305) 789-2759

Extension: 3359

Elsa.VanGorp@gmlaw.com

www.gmlaw.com

**From:** Scott Miller <scott@samlawnyc.com>
**Sent:** Wednesday, August 23, 2023 8:00 AM
**To:** Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>
**Subject:** Re: Miller v. Eisen

Elsa good morning.

Please call me with regard to our conversation the other day.

Thanks.

Scott

On Mon, Aug 21, 2023 at 10:03 AM Scott Miller <scott@samlawnyc.com> wrote:

# Elsa-Good Morning.

# Can you please give me a call sometime today?

# 718 797 0700

# Thank you.

# Scott

--

**Scott Miller, Esq.**

**Hudson Valley Office**·
39 North Front Street
Kingston, New York 12401
scott@samlawnyc.com
tel: 718.797.0700
fax: 845.481.4254
www.samlawnyc.com [samlawnyc.com]

**Brooklyn Office**:
186 Joralemon Street, Suite 1202
Brooklyn, New York 11201

NOTICE: This e-mail and any attachments may contain legally privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying of this e-mail and its attachments is strictly prohibited. If you receive this transmission in error, please immediately notify the sender by telephone or e-mail and permanently delete this e-mail and its attachments and destroy any printout thereof.

**IMPORTANT NOTICE: Beware of Cyber Fraud.** You should **NEVER** wire money to any bank account that Miller & Kahn provides to you either in the body of this or any email or in an attachment without first speaking with the attorney in our office who is handling your transaction. Further, **DO NOT** accept emailed wire instructions from anyone else without voice verification. Even if an email looks like it has come from this office or someone involved in your transaction, **CALL US FIRST AT A NUMBER YOU KNOW TO BE CORRECT FOR THIS OFFICE** to verify the information before wiring any money. Failure to do so is at your own risk. **Be particularly wary of any request to change wire instructions you have already received.**

--

**Scott Miller, Esq.**

**Hudson Valley Office**·
39 North Front Street
Kingston, New York 12401
scott@samlawnyc.com
tel: 718.797.0700
fax: 845.481.4254
www.samlawnyc.com [samlawnyc.com]

**Brooklyn Office**:

9/28/2023, 10:22 AM

186 Joralemon Street, Suite 1202
Brooklyn, New York 11201

NOTICE: This e-mail and any attachments may contain legally privileged and/or confidential information. If
you are not the intended recipient, any dissemination, distribution or copying of this e-mail and its
attachments is strictly prohibited. If you receive this transmission in error, please immediately notify the sender
by telephone or e-mail and permanently delete this e-mail and its attachments and destroy any printout thereof.

**IMPORTANT NOTICE: Beware of Cyber Fraud.** You should **NEVER** wire money to any bank account that Miller &
Kahn provides to you either in the body of this or any email or in an attachment without first speaking with the
attorney in our office who is handling your transaction. Further, **DO NOT** accept emailed wire instructions from
anyone else without voice verification. Even if an email looks like it has come from this office or someone
involved in your transaction, **CALL US FIRST AT A NUMBER YOU KNOW TO BE CORRECT FOR THIS OFFICE** to
verify the information before wiring any money. Failure to do so is at your own risk. **Be particularly wary of
any request to change wire instructions you have already received.**

GREENSPOON MARDER LLP LEGAL NOTICE
The information contained in this transmission may be attorney/client privileged and confidential. It is intended
only for the use of the individual or entity named above. If the reader of this message is not the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this communication is
strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-
mail.

Unless specifically indicated otherwise, any discussion of tax issues contained in this e-mail, including any
attachments, is not, and is not intended to be, "written advice" as defined in Section 10.37 of Treasury
Department Circular 230.

A portion of our practice involves the collection of debt and any information you provide will be used for that
purpose if we are attempting to collect a debt from you.

----------
From: Scott Miller <scott@samlawnyc.com>
Date: Mon, Aug 28, 2023 at 1:20 PM
To: Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>
Cc: {F15840128}.Active@gmlaw.imanage.work <{F15840128}.Active@gmlaw.imanage.work>

??? 
**Scott Miller, Esq.**



**MILLER & KAHN**
ATTORNEYS AT LAW

**Hudson Valley Office:**
39 North Front Street
Kingston, New York 12401
scott@samlawnyc.com
tel: 718.797.0700
fax: 845.481.4254
www.samlawnyc.com

**Brooklyn Office:**
186 Joralemon Street, Suite 1202
Brooklyn, New York 11201

--
**Scott Miller, Esq.**



**MILLER & KAHN**
ATTORNEYS AT LAW

**Hudson Valley Office:**
39 North Front Street
Kingston, New York 12401
scott@samlawnyc.com
tel: 718.797.0700
fax: 845.481.4254
www.samlawnyc.com

**Brooklyn Office:**
186 Joralemon Street, Suite 1202
Brooklyn, New York 11201

NOTICE: This e-mail and any attachments may contain legally privileged and/or confidential information. If you are not the intended recipient, any dissemination, distribution or copying of this e-mail and its attachments is strictly prohibited. If you receive this transmission in error, please immediately notify the sender by telephone or e-mail and permanently delete this e-mail and its attachments and destroy any printout thereof.

**IMPORTANT NOTICE: Beware of Cyber Fraud.** You should **NEVER** wire money to any bank account that Miller & Kahn provides to you either in the body of this or any email or in an attachment without first speaking with the attorney in our office who is handling your transaction. Further, **DO NOT** accept emailed wire instructions from anyone else without voice verification. Even if an email looks like it has come from this office or someone involved in your transaction, **CALL US FIRST AT A NUMBER YOU KNOW TO BE CORRECT FOR THIS OFFICE** to verify the information before wiring any money. Failure to do so is at your own risk. **Be particularly wary of any request to change wire instructions you have already received.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:23-cv-80290-RLR

JONATHAN MILLER,

          Plaintiff,

   v.

JOYCE EISEN and SCOTT MILLER, as
Trustee of the Sydney Miller Trust,

          Defendants.

**DEFENDANT JOYCE EISEN'S
FIRST SET OF INTERROGATORIES
TO PLAINTIFF**

      Defendant, Joyce Eisen, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby propounds its First Set of Interrogatories to Plaintiff Jonathan Miller, who shall serve answers to the Interrogatories in writing within thirty (30) days.

## DEFINITIONS

      A.    "Beneficiary" or "Beneficiaries" mean one or more of the five beneficiaries of named in the "First Amendment to Sydney Miller Revocable Trust Agreement" dated January 24, 2020, to wit, Joyce Eisen, Jonathan R. Miller, Scott A. Miller, Douglas S. Miller, and Jacqueline L. Feldbaum.

      B.    "Communications" or "statements" mean any oral or written statement, dialogue, colloquy, discussion, conversation and any other transfer of thoughts or ideas between persons by means of documents and includes a transfer of data from one location to another by electronic or similar means.

      C.    "Date" shall mean the exact date, including day, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

      D.    "Decedent," "Settlor," or "Grantor," means Sydney Miller, deceased.

      E.    "Document" means, without limitation, all paper documentation or electronically

stored information[1] – including writings, drawings, graphs, charts, photographs, sound recordings, video recordings, images, and other data or data compilations, internal and external e-mail, letters, Correspondence, communications, notes, notations, memoranda, invoices, workorders, calendars, schedules, books, records, all drafts and/or versions – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

      F.     "Estate" means the estate of Sydney Miller, unless otherwise specified.

      G.     "Lawsuit" means the above-styled action.

      H.     "Person," means any natural person or any entity, including without limitation any individual, firm, corporation, company, joint venture, trust, tenancy, association, partnership, business, agency, department, bureau, board, commission, or any other form of public, private or legal entity. Any reference herein to any public or private company, partnership, association, or other entity include such entity's subsidiaries and affiliates, as well as the present and former directors, officers, employees, attorneys, agents and anyone acting on behalf of, at the direction of, or under the control of the entity, its subsidiaries or its affiliates.

      I.     "Thing" or "item" includes documents and all three-dimensional objects of any kind including, but not limited to, samples, prototypes, parts, objects, mark-ups, displays, exhibits,

---

[1] The term "document" as it pertains to electronically stored information and/or computer records (ESI) includes but is not limited to, responsive documents on hard storage disks, jumpdrives, CD-ROMs, optical discs, backup drives, printer buffers, smart cards, memory calculators, pagers, personal digital assistants such as iPhone and/or Blackberry devices as well as external and/or internal e-mail and any attachments (whether server-based e-mail and/or Web-based email),electronic appointment books, cellular telephones, instant and/or SMS text messages, telephone conference call recordings, answering machine records, fax machine data and logs, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. In response to this request, ESI should be produced in native format in a reasonable readable format, clearly labeled as to the kind of software used to prepare, organize, and manipulate the data contained.

2

books, advertising, tape cartridges or cassettes or reels, computer disks, flash drives, and other storage media, containers, wrappers, and representations.

J.      "Trust" means the Sydney Miller Revocable Living Trust Agreement dated October 12, 2005, without regard to any amendment by the First Amendment to Sydney Miller Revocable Trust Agreement dated January 24, 2020.

K.      "2020 Amendment" means the First Amendment to Sydney Miller Revocable Trust Agreement dated January 24, 2020.

L.      "Trustee" means any and all trustees of the Trust.

M.      "Will" means the last will and testament of Sydney Miller.

N.      "You" and "Your" mean the Plaintiff, Jonathan Miller, to whom this discovery request is addressed, including you and your agents, attorneys, and all other persons acting or purporting to act on your behalf.

O.      "Relating to," "related to," "regarding" and "evidencing" mean to, directly or indirectly, refer to, reflect, concern, mention, evidence, describe, pertain to, arise out of or in connection with or in any way legally, logically, or factually be connected with the matter discussed.

P.      "And" and "or" mean "and/or" and shall be read to encompass the broader of the two possible constructions and shall not be interpreted disjunctively so as to exclude any information or documents otherwise within the scope of any Request.

Q.      Any pronouns used herein shall include and be read and applied as to encompass the alternative forms of the pronoun, whether masculine, feminine, neuter, singular or plural, and shall not be interpreted so as to exclude any information or documents otherwise within the scope of the Request.

R.      For all terms that are not specifically defined in this section, the common dictionary definition and usage of the term should be applied as set forth in the Merriam-Webster dictionary or on www.dictionary.com.

3

**INSTRUCTIONS**

1.      These Interrogatories are continuing in nature and the responses must be supplemented by you at such time in the future as any facts, information and documents discovered hereafter shall have been ascertained, and such supplemental responses shall be served upon the undersigned attorneys reasonably after such discovery. The original of the responses are to be served on Defendant's attorneys at the offices of Greenspoon Marder LLP, 200 East Broward Boulevard, Suite 1800, Fort Lauderdale, Florida 33301.

2.      If you assert that any information called for by these Interrogatories is protected against disclosure by the attorney's work product doctrine, attorney-client privilege, or other similar grounds, you shall provide the following information with respect to such information or document: (a) the author(s) or speaker, including their name and capacity or title; (b) type, subject matter and physical size/number of pages of the document or information; (c) the name and capacity of all addressees and recipients of the original or copies of a document or the information; (d) all persons to whom the information or document was distributed, shown or explained; (e) the date the information was first known or a withheld document was created and/or dated; (f) the source from which the information or document was derived; and (g) the nature of the privilege asserted or other basis upon which you contend that you are entitled to withhold the information or document.

3.      If you object to any portion of an Interrogatory, provide all information responsive to the portion to which you do not object.

**INTERROGATORIES**

1.      Identify all persons with knowledge regarding the facts of Your accusations that Defendant procured the 2020 Amendment through any combination of fraud, duress and undue influence over Sydney Miller, and for each such person, state the following: (a) name; (b) address; (c) telephone number; (d) e-mail address; (e) relationship to the parties or the Decedent; and (f) a description of their knowledge.

2.      Identify in specific detail all facts, including but not limited to any specific statements or documents, who uttered or wrote them, and who observed or otherwise learned of them, supporting Your accusation that starting around 2018, Sydney Miller's cognitive and mental health began to deteriorate sharply, including without limitation as described in Paragraphs 50 and 58 of the Complaint.

4

3.    Describe each step or act that You contend Defendant took to allegedly procure the 2020 Amendment in a manner that should result in it being declared null and void.

4.    Identify in specific detail all facts, including but not limited to any specific statements or documents, who uttered or wrote them, and who observed or otherwise learned of them, supporting Your accusation that Sydney Miller executed the 2020 Amendment as the result of alleged undue influence at the hands of Joyce Eisen.

5.    Identify in specific detail all facts, including but not limited to any specific statements or documents, who uttered or wrote them, and who observed or otherwise learned of them, supporting Your accusation that Sydney Miller executed the 2020 Amendment as the result of alleged duress at the hands of Joyce Eisen.

6.    Identify in specific detail all facts supporting your accusation that Defendant allegedly indicated or communicated false information to or concealed information from Sydney Miller and others in relation to her financial circumstances, including where, how, and in what context or circumstances any statements or omissions were made and what circumstances existed that should have caused Defendant to disclose any concealed information.

7.    Identify in specific detail all facts from July 11, 2022 through July 15, 2022, including but not limited to any specific statements or documents, who uttered or wrote them, and who observed or otherwise learned of them, supporting Your accusation that, after being made aware of Sydney Miller's wish to be in home hospice, Defendant agreed to Sydney Miller returning to her home for hospice care only after You agreed she would not need to pay him moneys that she owed You, including any statements by Sydney Miller regarding the subject and the dollar amount that You allegedly waived.

8.    Identify in specific detail the facts, including the context, circumstances, and persons who were involved in the conversations or communications, and, to Your best recollection, the words used by Sydney Miller, as to *each time* from 2008 through July 15, 2022, Sydney Miller expressed the following or its rough equivalent to anyone regarding Defendant:

      (a) That Defendant was "impoverished;"

      (b) That Defendant was unable to pay a fair share of her and Sydney Miller's expenses;

      (c) That Defendant was "living on limited income;"

      (d) That Sydney Miller was a "guest" in Defendant's home; and

5

(e) That Sydner Miller feared Defendant would "throw him out of the house."

9.      Identify in specific detail all facts, including but not limited to any specific statements or documents, who uttered or wrote them, and who observed or otherwise learned of them, supporting Your accusation that Defendant emotionally abused Sydney Miller.

10.     Describe in specific detail any communications Sydney Miller had with You or any of Your siblings regarding a testamentary bequest or devise to Defendant or a change thereto, including without limitation related to a desire to make or not make a gift to her and/or a desire to execute, amend, or revoke any testamentary document or gift or otherwise modify his estate plan with respect to Defendant, identifying when the communication occurred, how and where it occurred (e.g. phone, email, letter, at his home, in the hospital, etc.), who was present, and why or the context and circumstances surrounding or that gave rise to the communication.

11.     Describe in specific detail any Communication, act, undertaking, or effort by You or any of Your siblings regarding Sydney Miller's purported wish or desire to revoke the 2020 Amendment, identifying when the communication, act, undertaking, or effort occurred, how and where it occurred (e.g., phone, email, letter, at Defendant's home, in the hospital, etc.), who was present, and why or the context and circumstances surrounding or that gave rise to the communication, act, undertaking, or effort.

12.     Describe in specific detail the discussions or negotiations including, between, or among any of Sydney Miller, Defendant, You, and/or Your siblings relating to any interest for Defendant in Sydney Miller's New York vacation home and a purported resolution in a payment in the amount of $120,000, which is referenced in Paragraphs 35 through 48 of the Complaint, including without limitation who has personal knowledge of the communications, what was said, and where, when, and how the communications/negotiations occurred.

13.     Provide a complete and detailed description of how You and Your siblings assisted Sydney Miller in managing and monitoring Sydney Miller's financial, tax, legal, and medical affairs between January 1, 2018 through July 15, 2022.

14.     With respect to the silver lockbox that belonged to Sydney Miller and that was stored at Defendant's residence, please provide the following (provide all information for each person, item, or document): (a) the identity of who took the silver lock box from Defendant's residence or any of its contents; (b) when he or she took the silver lock box and/or its contents; (c) each and every item, including without limitation documents, that were separately taken from the

6

silver lock box or that were located in the silver lock box when it was taken from Defendant's residence; (d) who subsequently received possession, custody, or control of the silver lock box or any of its contents; and (e) the purpose for the taking or transfer of the silver lock box or any of its contents.

15.      Identify the total value of assets held by the Estate of Sydney Miller and the Sydney Miller Revocable Trust, respectively, as of the moment of Sydney Miller's death.

16.      Identify all financial, tax, estate planning, or legal documents, including but not limited to account statements, in your custody, control, or possession that name Defendant or Defendant's trust or were prepared for Defendant or Defendant's trust, and for each document provide: (a) a description of its contents; (b) whether the document relates to Defendant or Defendant's trust; (c) the date or dates for which it/they correspond; (d) the associated account, if any; (e) the date the document came into Your custody, control, or possession; and (f) from whom and how the document came to be in Your custody, control, or possession.

17.      Identify all legal, financial, tax, medical, psychiatric, psychological, neurological, and therapeutic professionals from whom Sydney Miller sought or obtained professional, specialized, or expert advice or services between January 1, 2015 through July 15, 2022.

18.      On what date(s) and how did You become aware of the existence and contents of and/or obtain or receive a copy of the Sydney Miller Revocable Trust inclusive of the 2020 Amendment?

19.      On what date did You accept the trusteeship of the Sydney Miller Revocable Trust?

20.      Identify in specific detail what duties and obligations, or steps in furtherance of duties and obligations, You discharged during Your time as Successor Trustee of the Sydney Miller Revocable Trust, as amended, and when You did so, including without limitation providing information to the Beneficiaries or interested persons, investigating and/or preserving property, accounting, administering, distributing trust assets, and/or investing trust assets.

21.      Identify in specific detail any and all information You or Your other siblings have received from Scott Miller regarding the Trust, including without limitation Trust assets, administration of the Trust, Trust accountings, and distributions since You resigned as Successor Trustee, including without limitation the date(s) on which such information was provided.

22.      Identify in specific detail any Communications between You, Your spouse or children, Your siblings, their spouses or children, Sydney Miller, Defendant, and/or any financial,

7

legal, and tax professionals regarding the 2020 Amendment, including but not limited to any efforts to invalidate, contest, or challenge the 2020 Amendment, whether by court proceeding or otherwise, including without limitation when the communication occurred, how and where it occurred (e.g., phone, email, letter, at Defendant's home, in the hospital, etc.), who was present, and why or the context and circumstances surrounding or that gave rise to the communication.

23.    Describe each time You visited Sydney Miller in Florida, the duration of the visit, and the general nature of the visit between January 1, 2016 through July 15, 2022.

24.    Indicate the name and contact information for each person who had any role in answering, assisting, consulting, or otherwise contributed to answering these interrogatories and detail their role and to which interrogatories they were involved in responding.

Dated:  August 28, 2023.                    GREENSPOON MARDER LLP

                                            By: /s/ Elsa Van Gorp
                                            ELSA VAN GORP, ESQUIRE
                                            Florida Bar No. 120527
                                            ROY TAUB, ESQUIRE
                                            Florida Bar No. 116263
                                            200 East Broward Boulevard, Suite 1800
                                            Fort Lauderdale, Florida 33301
                                            Telephone: 954-491-1120
                                            Facsimile:  954-333-4098
                                            elsa.vangorp@gmlaw.com
                                            roy.taub@gmlaw.com
                                            sara.austin@gmlaw.com
                                            cheryl.cochran@gmlaw.com

                                            *Attorneys for Defendant Joyce Eisen*

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2023, the foregoing was served via e-mail and

U.S. Mail to:

> **JONATHAN MILLER, ESQUIRE**
> **jonathan.miller@lawyer.com**
> **100 Overlook Center, 2nd Floor**
> **Princeton, NJ 08540**
> **(605) 955-1226**

_/s/ Elsa Van Gorp_____
ELSA VAN GORP, ESQUIRE
Florida Bar No. 120527

9

# Exhibit 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:23-cv-80290-RLR

| | |
|---|---|
| JONATHAN MILLER,<br><br>              Plaintiff,<br><br>     v.<br><br>JOYCE EISEN and SCOTT MILLER, as<br>Trustee of the Sydney Miller Trust,<br><br>              Defendants. | **DEFENDANT JOYCE EISEN'S**<br>**FIRST REQUEST FOR PRODUCTION**<br>**TO PLAINTIFF** |

Defendant, JOYCE EISEN, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, requests that Plaintiff, JONATHAN MILLER, produce and permit inspection and copying of the documents and things below **within thirty (30) days of service** of this First Request for Production of Documents to Plaintiff ("Request").

## I. DEFINITIONS

A.      "Beneficiary" or "Beneficiaries" mean one or more of the five beneficiaries of named in the "First Amendment to Sydney Miller Revocable Trust Agreement" dated January 24, 2020, to wit, Joyce Eisen, Jonathan R. Miller, Scott A. Miller, Douglas S. Miller, and Jacqueline L. Feldbaum.

B.      "Communications" or "statements" mean any oral or written statement, dialogue, colloquy, discussion, conversation and any other transfer of thoughts or ideas between persons by means of documents and includes a transfer of data from one location to another by electronic or similar means.

C.      "Date" shall mean the exact date, including day, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

D.      "Decedent," "Settlor," or "Grantor," means Sydney Miller, deceased.

E.      "Document" means, without limitation, all paper documentation or electronically stored information[1] – including writings, drawings, graphs, charts, photographs, sound recordings, video recordings, images, and other data or data compilations, internal and external e-mail, letters, Correspondence, communications, notes, notations, memoranda, invoices, workorders, calendars, schedules, books, records, all drafts and/or versions – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

F.      "Estate" means the estate of Sydney Miller, unless otherwise specified.

G.      "Lawsuit" means the above-styled action.

H.      "Person," means any natural person or any entity, including without limitation any individual, firm, corporation, company, joint venture, trust, tenancy, association, partnership, business, agency, department, bureau, board, commission, or any other form of public, private or legal entity. Any reference herein to any public or private company, partnership, association, or other entity include such entity's subsidiaries and affiliates, as well as the present and former directors, officers, employees, attorneys, agents and anyone acting on behalf of, at the direction of, or under the control of the entity, its subsidiaries or its affiliates.

---

[1] The term "document" as it pertains to electronically stored information and/or computer records (ESI) includes but is not limited to, responsive documents on hard storage disks, jumpdrives, CD-ROMs, optical discs, backup drives, printer buffers, smart cards, memory calculators, pagers, personal digital assistants such as iPhone and/or Blackberry devices as well as external and/or internal e-mail and any attachments (whether server-based e-mail and/or Web-based email),electronic appointment books, cellular telephones, instant and/or SMS text messages, telephone conference call recordings, answering machine records, fax machine data and logs, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. In response to this request, ESI should be produced in native format in a reasonable readable format, clearly labeled as to the kind of software used to prepare, organize, and manipulate the data contained.

2

I.      "Thing" or "item" includes documents and all three-dimensional objects of any kind including, but not limited to, samples, prototypes, parts, objects, mark-ups, displays, exhibits, books, advertising, tape cartridges or cassettes or reels, computer disks, flash drives, and other storage media, containers, wrappers, and representations.

J.      "Trust" means the Sydney Miller Revocable Living Trust Agreement dated October 12, 2005, without regard to any amendment by the First Amendment to Sydney Miller Revocable Trust Agreement dated January 24, 2020.

K.      "2020 Amendment" means the First Amendment to Sydney Miller Revocable Trust Agreement dated January 24, 2020.

L.      "Trustee" means any and all trustees of the Trust.

M.      "Will" means the last will and testament of Sydney Miller.

N.      "You" and "Your" mean the Plaintiff, Jonathan Miller, to whom this discovery request is addressed, including you and your agents, attorneys, and all other persons acting or purporting to act on your behalf.

O.      "Relating to," "related to," "regarding" and "evidencing" mean to, directly or indirectly, refer to, reflect, concern, mention, evidence, describe, pertain to, arise out of or in connection with or in any way legally, logically, or factually be connected with the matter discussed.

P.      "And" and "or" mean "and/or" and shall be read to encompass the broader of the two possible constructions and shall not be interpreted disjunctively so as to exclude any information or documents otherwise within the scope of any Request.

Q.      Any pronouns used herein shall include and be read and applied as to encompass the alternative forms of the pronoun, whether masculine, feminine, neuter, singular or plural, and

3

shall not be interpreted so as to exclude any information or documents otherwise within the scope of the Request.

  R.  For all terms that are not specifically defined in this section, the common dictionary definition and usage of the term should be applied as set forth in the Merriam-Webster dictionary or on www.dictionary.com.

## II.  INSTRUCTIONS

  A.  You are to respond in writing and to produce the documents and items specified herein for copying an inspection pursuant to the Federal Rules of Civil Procedure **within thirty (30) days of service** of this Request to Defendant's attorneys at the offices of Greenspoon Marder LLP, 200 East Broward Boulevard, Suite 1800, Fort Lauderdale, Florida 33301.

  B.  This Request is continuing in nature and the answers and documents must be supplemented by you in the future as you ascertain or discover additional facts, information and/or documents that are responsive to this Request. The supplemental information and/or documents shall be served upon the undersigned attorney(s) within a reasonable time after discovery. The responses are to be served upon JOYCE EISEN'S attorneys at the offices of Greenspoon Marder, LLP, 200 East Broward Boulevard, Suite 1800, Fort Lauderdale, Florida 33301.

  C.  You are required to produce a document or tangible thing if it is within your possession, custody, or control. Possession, custody or control includes constructive possession, such that you need not have actual physical possession.

  D.  As long as you have the right to compel the production from a third party (including a person, company, financial institution, agency, authority or representative), you are deemed to have possession, custody, or control and must obtain and produce the document.

  E.  All documents must be produced in full, without abridgment, abbreviation or

4

expurgation of any sort. Identical copies of a document do not need to be produced, but if a version of a document contains notes or other writings that do not appear on other versions of the same document, it is a "non-identical copy" and must be produced.

F.      If you object to any portion or aspect of any of these Requests, provide all information responsive to the portion to which you do not object.

G.      If after an inquiry that is reasonable under the circumstances, you do not have any documents responsive to a particular numbered Request, please state so in writing.

H.      If you cannot produce a responsive document after exercising due diligence to secure it, please state so in writing and provide the specific information called for by Instructions H and/or I below.

I.      Any of the documents or items that cannot be produced in full should be produced to the extent possible, specifying the reasons for the inability to produce the remainder.

J.      All documents must be produced as they are kept in the usual course of business or organized and labeled to correspond with the numbered Requests. The selection of documents from files and other sources shall be performed in a manner to ensure that the file or other source from which the document is obtained may be identified.

K.      If you contend that you are entitled to withhold any responsive document(s) on the basis of attorney-client privilege, attorney work product doctrine, or other such grounds, for each such document specify: (a) the author(s), including their name and capacity or title; (b) type and subject matter of the document; (c) the name and capacity of all addressees and recipients of the original or copies thereof; (d) all persons to whom the document was distributed, shown or explained; (e) the date the document was created and/or dated; (f) the source of the factual information from which such document was prepared; and (g) the nature of the privilege or other

basis upon which you contend that you are entitled to withhold the document.

L.      If you contend that a responsive document has been lost, destroyed, placed beyond your control, or otherwise disposed of, for each such document specify: (a) the author(s), including their name and capacity or title; (b) type, subject matter and physical size/number of pages of the document; (c) the date the document was created and/or dated; (d) the addressees and recipients of the original or copies thereof; (e) number of pages, attachments and appendices; (f) all persons to whom the document was distributed, shown or explained; (g) date of destruction or other disposition; (h) reason for destruction or other disposition; (i) person authorizing destruction or other disposition; (m) person destroying or otherwise disposing of document(s); and (j) if not destroyed, the person(s) or entity(s) in possession of document.

M.      Please produce all responsive documents with a Bates stamp number or other distinguishing mark on each page or item that separately identifies it from all others.

N.      Documents should be segregated and identified with the numbered Request to which they are responsive. If a particular document is responsive to more than one Request, please state so in writing.

### III.  DOCUMENT REQUESTS

1.      All documents referenced in your Rule 26(a)(1) initial disclosures that you have not already produced and any other documents you are obligated to disclose pursuant to Rule 26(a)(1) not yet identified.

2.      Documents supporting your allegations that Defendant procured the January 24, 2020 Amendment to the Sydney Miller Trust Agreement.

3.      Documents in your custody, control, or possession regarding the circumstances under which You believe the 2020 Amendment was procured, prepared, or executed.

4.      Documents that rebut any affirmative defense asserted by Ms. Eisen.

6

5.      Documents and communications that relate to or support your responses to any interrogatory propounded to you in this case.

6.      Documents that support the denial of any Requests for Admissions.

7.      Your file from Your previous representation of Defendant, including but not limited to all retainer/engagement agreements, invoices, account statements, correspondence, pleadings, filings, notes, and any other Documents regarding said previous representation in Your possession, custody, or control or that of Your law firm.

8.      Any communications between You and any person other than Defendant regarding your previous representation of Defendant.

9.      Documents reflecting or exhibiting any testamentary wishes or intentions of Sydney Miller, including without limitation any version of his last will and testament, trusts, amendments, restatements, addendums, schedules to testamentary documents, codicils, separate testamentary writings, and letters or notes, whether or not executed, between January 1, 2004 through July 15, 2022.

10.     All versions, whether executed or unexecuted, of powers of attorney, medical powers of attorney, medical proxies, designation of medical surrogate, and designation of pre-need guardian created by or on behalf of Sydney Miller from January 1, 2004 through July 15, 2022.

11.     Documents relating to a "Durable Family Power of Attorney" executed by Sydner Miller appointing you as his Attorney-in-Fact, including but not limited to a copy of the "Durable Family Power of Attorney."

12.     Documents relating to a "Durable Medical Power of Attorney" executed by Sydner Miller appointing you as his Attorney-in-Fact, including but not limited to a copy of the "Durable Medical Power of Attorney."

13.     Testamentary documents or documents that you have possessed or have had access to since January 1, 2015 through present that exhibited the testamentary wishes or intentions created by or on behalf of Defendant between January 1, 2004 through July 15, 2022 including without limitation last will and testaments, trusts, amendments, restatements, addendums, schedules, codicils, and separate testamentary writings, whether or not executed.

14.     Documents relating to any Trust accountings, or documents provided to any Beneficiaries in lieu of a Trust accounting since July 15, 2022.

15.     Journal or diary entries, or similar Documents, by Sydney Miller written between January 1, 2015 through July 15, 2022.

7

16.     Any financial, tax, estate planning, or legal documents, including but not limited to account statements or tax returns, in your custody, control, or possession that name Defendant or Defendant's trust or were prepared for Defendant or Defendant's trust.

17.     Documents reflecting the receipt, taking, or possession by You or any person other than Defendant of any financial, tax, estate planning, or legal documents, including but not limited to account statements, that name Defendant or Defendant's trust or were prepared for Defendant or Defendant's trust.

18.     All of Defendant's Documents taken, obtained, photographed, recorded, sent, received, transferred, or otherwise communicated by You, any of your family members, or anyone acting on Your or their behalf, including without limitation from her home, files, emails, electronic devices, electronic accounts, financial accounts, and cloud-based storage.

19.     All Documents and items that were located or kept in Sydney Miller's silver lock box in Defendant's residence that You or any of Your siblings or anyone acting on Your or their behalf took or received possession of the same at any time.

20.     All Communications between or among You and/or any of Your siblings and Defendant.

21.     Medical records and documents related to any diagnosis, treatment, or medical advice to, of or for Sydney Miller from January 1, 2016 through July 15, 2022.

22.     Documents indicating or demonstrating your acceptance of trusteeship of the Sydney Miller Trust either by substantially complying with a method of acceptance provided in the terms of the Trust or by accepting delivery of the Trust property, exercising powers or performing duties as Trustee, or otherwise indicating acceptance of the Trusteeship.

23.     Any obituaries of Sydney Miller.

24.     Documents, including but not limited to, online and social media comments and statements, and any recordings of or related to the eulogies, obituary, statements and speeches made at the funeral or any service, celebration, ceremony, or memorial in honor of Sydney Miller, including but not limited to Your eulogy of Sydney Miller.

25.     Documents supporting your allegation that Sydney Miller's cognitive and mental health began to deteriorate sharply around 2018, as alleged in Paragraph 50 of the Complaint.

26.     Documents supporting your allegation that Sydney Miller lived in constant fear of Defendant, as alleged in Paragraph 2 of the Complaint.

8

27.    Documents supporting your allegation that Defendant had a pattern of exploiting and manipulating Sydney Miller, as alleged in Paragraph 5 of the Complaint.

28.    Documents supporting your allegation that Defendant made unreasonably self-centered, incessant and unyielding demands to or in relation to Sydney Miller, as alleged in Paragraph 23 of the Complaint.

29.    Documents supporting your allegation that Defendant engaged in constant emotional abuse and belittling of Sydney Miller, as alleged in Paragraph 23 of the Complaint.

30.    Documents supporting your allegation that Defendant constantly insulted Syndey Miller's intelligence to his own face as well as in the presence of his children and friends, as alleged in Paragraph 24 of the Complaint.

31.    Documents supporting your allegation that Sydney Miller felt and expressed that he was a "guest" in Defendant's home, subject to her whims, and could be "thrown out on the street" at any time, as alleged in Paragraphs 22, 28, 29, 37, 63, and 71 of the Complaint.

32.    Documents supporting your allegation that Defendant responded with pathological rage when Sydney Miller's children tried to address issues with her, as alleged in Paragraph 27 of the Complaint.

33.    Documents supporting your allegation that, once Defendant got wind of Sydney Miller's estate planning, she began pressuring him for her "share," as alleged in Paragraph 35 of the Complaint.

34.    Documents supporting your allegation that Sydney Miller expressed his fear that Defendant would throw him out of the house, as alleged in Paragraph 57 of the Complaint.

35.    Documents supporting your allegation that Defendant would only agree to Sydney Miller returning to her home for hospice care if Plaintiff agreed she would not need to pay him monies that Defendant allegedly owed him, and made such demand on Plaintiff, as alleged in Paragraphs 79-83 of the Complaint.

36.    Documents supporting your allegation that Sydney Miller had trouble managing his finances, particularly his taxes, as alleged in Paragraph 58 of the Complaint.

37.    Documents and communications supporting your allegation that Defendant pressured Sydney Miller to create or execute the 2020 Amendment.

38.    Documents supporting your allegations that Sydney Miller executed the 2020 Amendment as the result of alleged undue influence by Defendant.

9

39.     Documents supporting your allegations that Sydney Miller executed the 2020 Amendment as the result of alleged duress from Defendant.

40.     Documents supporting your allegations that Defendant isolated, distanced, or caused diminished relationships between Sydney Miller and any of his children from 2015 through July 15, 2022.

41.     Documents supporting your allegation that Defendant disparaged Sydney Miller's children to him from 2015 through July 15, 2022.

42.     Documents supporting your allegations that Defendant pressured Sydney Miller to provide a monetary or financial benefit to her by inter vivos gifts or in his estate plan from 2015 through the date of Sydney Miller's death.

43.     Documents supporting your allegations that Sydney Miller allegedly executed the 2020 Amendment as a result of Defendant's desires and actions rather than the true wishes of Sydney Miller.

44.     Documents supporting your allegations that Sydney Miller depended on Defendant between January 1, 2016 through January 31, 2020.

45.     Documents supporting your allegations that Defendant allegedly indicated or communicated false information or otherwise concealed information from Sydney Miller and others in relation to her financial circumstances.

46.     Documents supporting your allegations that Sydney Miller believed Defendant was "impoverished."

47.     Documents supporting your allegations that Defendant caused Sydney Miller to believe that Defendant was "impoverished."

48.     Documents supporting your allegations that Sydney Miller believed Defendant was living on a limited income.

49.     Documents supporting your allegations that Defendant caused Sydney Miller to believe that Defendant was living on a limited income.

50.     Documents supporting your allegations that Defendant emotionally abused Sydney Miller.

51.    Documents reflecting or relating to any intent by Sydney Miller regarding a testamentary bequest or devise to Defendant or a change thereto, including without limitation related to a desire to make or not make a gift to her and/or a desire to execute, amend, or revoke any testamentary document or gift or otherwise modify his estate plan with respect to Defendant.

52.    Documents reflecting or relating to any communication by Sydney Miller with any person regarding a testamentary bequest or devise to Defendant or a change thereto, including without limitation related to a desire to make or not make a gift to her and/or a desire to execute, amend, or revoke any testamentary document or gift or otherwise modify his estate plan with respect to Defendant.

53.    Documents reflecting or relating to any wish or desire by Sydney Miller to revoke the 2020 Amendment.

54.    Documents reflecting or relating to any Communication, act, undertaking, or effort by You or any of Your siblings regarding Sydney Miller's purported wish or desire to revoke the 2020 Amendment.

55.    Documents reflecting or relating to Your and Your sibling's attention to Sydney Miller's "medical compliance," arranging for home health aides, advocating for physical and occupational therapy, purchasing medical equipment, and pursuing a home safety assessment for Sydney Miller from January 1, 2020 to July 15, 2022.

56.    Documents regarding any discussions or negotiations including, between, or among any of Sydney Miller, Defendant, You, and/or Your siblings relating to any interest for Defendant in Sydney Miller's New York vacation home and a purported resolution in a payment in the amount of $120,000, which is referenced in Paragraphs 35 through 48 of the Complaint.

57.    Documents relating to the letter Sydney Miller sent to his children in January 2016 instructing them that it was his wish to bequeath $120,000 to Defendant and/or to permit her to use the New York vacation home for one year after his death, as alleged in Paragraph 48 of the Complaint.

58.    Documents and any other items provided to You by Sydney Miller or obtained by You when Sydney Miller asked for assistance managing his affairs between January 1, 2018 through July 15, 2022.

59.    Documents reflecting or demonstrating how you and your siblings assisted Sydney Miller in managing and monitoring Sydney Miller's financial, tax, legal, and medical affairs between January 1, 2018 through July 15, 2022.

60.    Documents that demonstrate or relate to total value of assets held by the Estate of Sydney Miller as of the moment of Sydney Miller's death through present.

11

61.     Documents that demonstrate or relate to total value of assets held by the Sydney Miller Revocable Trust as of the moment of Sydney Miller's death through present.

62.     Documents in Your custody, control, or possession relating to or reflecting Defendant's personal financial information or documents, including but not limited to her estate planning.

63.     Documents in Your custody, control, or possession relating to or reflecting how You obtained Defendant's personal financial information or documents, including but not limited to her estate planning.

64.     Documents relating to any legal or financial professionals from whom Sydney Miller sought or obtained professional, specialized, or expert advice or services between January 1, 2015 through July 15, 2022.

65.     Documents relating to any medical professionals from whom Sydney Miller sought or obtained professional, specialized, or expert advice or services between January 1, 2015 through July 15, 2022.

66.     Documents relating to any psychiatric, psychological, neurological, or therapeutic professionals from whom Sydney Miller sought or obtained professional, specialized, or expert advice or services between January 1, 2015 through July 15, 2022.

67.     Documents that indicate when and how You became aware of the existence, terms, and contents of the Sydney Miller Revocable Trust.

68.     Documents that indicate when and how You became aware of the existence, terms, and contents of the 2020 Amendment.

69.     Documents relating to or reflecting Your and/or Scott Miller's reaction to learning of the 2020 Amendment.

70.     Communications You have had with anyone regarding the Trust.

71.     Communications You have had with anyone regarding the 2020 Amendment.

72.     Documents regarding your acceptance of the Successor Trustee position of the Trust.

73.     Documents relating to or reflecting any and all acts you took, powers you exercised, or duties you performed as Successor Trustee of the Trust.

12

74.     Documents relating to or reflecting any information regarding the Trust that You provided any of the Beneficiaries during the time You were the Successor Trustee, whether as an official Trust communication or not.

75.     Documents reflecting that within sixty days after acceptance of the Successor Trustee position of the Trust, You gave notice to the Beneficiaries of the acceptance and Your full name and address.

76.     Documents reflecting that within sixty days after acceptance of the Successor Trustee position of the Trust, You gave notice to the Beneficiaries of the Trust's existence, the identity of the settlor, the right to request a copy of applicable trust instruments, or the right to accountings.

77.     Documents reflecting or relating to any accountings of the Trust assets, liabilities, or holdings that You provided to any Beneficiary.

78.     Documents reflecting or relating to any request by a Beneficiary, including but not limited to Defendant, for an accounting of the Trust assets, liabilities, or holdings.

79.     Documents reflecting or relating to any request by a Beneficiary, including but not limited to Defendant, for information about the assets and liabilities of the trust and the particulars relating to administration of the Trust.

80.     Documents reflecting or relating to any response to a request by a Beneficiary, including but not limited to Defendant, for information about the assets and liabilities of the trust and the particulars relating to administration of the Trust.

81.     Documents reflecting any research or investigation You performed as to your duties and responsibilities as Successor Trustee of the Trust, including but not limited to any research, investigation, or inquiry you conducted as to Florida law or any provisions of the Florida Trust Code.

82.     Documents reflecting or relating to any investigations, distributions, transfers, or investments of Trust assets.

83.     Documents reflecting or related to Your resignation as Successor Trustee, including but not limited to the reasons for Your resignation.

84.     Documents related to what information You received from Scott Miller regarding the Trust, including without limitation Trust assets, liabilities, and holdings, administration of the Trust, Trust accountings, documents provided in lieu of a Trust Accounting, and distributions since you resigned as Successor Trustee.

13

85.　To the extent not already requested, Documents relating to any Communications between You, Your spouse or children, Your siblings, their spouses or children, Sydney Miller, Defendant, and/or any financial, legal, and tax professionals regarding the Trust.

86.　To the extent not already requested, Documents relating to any Communications between You, Your spouse or children, Your siblings, their spouses and children, Sydney Miller, Defendant, and/or any financial, legal, and tax professionals regarding the 2020 Amendment, including but not limited to any efforts to invalidate, contest, or challenge it, whether by court proceeding or otherwise.

87.　To the extent not already requested, Documents relating to any Communications between You, Your spouse or children, Your siblings, their spouses and children, Sydney Miller, Defendant, and/or any financial, legal, and tax professionals regarding Sydney Miller's estate, testamentary intent and/or wishes, or estate planning documents between January 1, 2016 through July 15, 2022.

88.　Documents reflecting or related to each time you visited Sydney Miller in Florida and the duration of each visit from January 1, 2016 through July 15, 2022.

89.　Documents reflecting each time you visited Defendant's residence in Florida and the duration of each visit from January 1, 2016 through July 15, 2022.

90.　Documents reflecting any advice, assistance, or contribution by any person who had any role in responding to Defendant's First Requests for Production, Interrogatories, or Requests for Admissions to You, their role, and/or to which they were involved in responding.

Dated:　August 28, 2023.　　　　　　　GREENSPOON MARDER LLP

By: /s/ Elsa Van Gorp
ELSA VAN GORP, ESQUIRE
Florida Bar No. 120527
ROY TAUB, ESQUIRE
Florida Bar No. 116263
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-333-4098
elsa.vangorp@gmlaw.com
roy.taub@gmlaw.com
sara.austin@gmlaw.com
cheryl.cochran@gmlaw.com
Attorneys for Defendant Joyce Eisen

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2023, the foregoing was served via e-mail and

U.S. Mail to:

**JONATHAN MILLER, ESQUIRE**
**jonathan.miller@lawyer.com**
**100 Overlook Center, 2nd Floor**
**Princeton, NJ 08540**
**(605) 955-1226**

/s/ Elsa Van Gorp
ELSA VAN GORP, ESQUIRE
Florida Bar No. 120527

15

# Exhibit 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:23-cv-80290-RLR**

| | |
|---|---|
| JONATHAN MILLER,<br><br>            Plaintiff,<br><br>    v.<br><br>JOYCE EISEN and SCOTT MILLER, as<br>Trustee of the Sydney Miller Trust,<br><br>            Defendants. | **DEFENDANT JOYCE EISEN'S FIRST<br>SET OF REQUESTS FOR<br>ADMISSIONS TO PLAINTIFF** |

Defendant, Joyce Eisen, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, requests that Plaintiff Jonathan Miller admit, deny or submit a written objection to the following statements within thirty (30) days of service of this Request for Admissions.

<u>**DEFINITIONS**</u>

A.     "Beneficiary" or "Beneficiaries" mean one or more of the five beneficiaries of named in the "First Amendment to Sydney Miller Revocable Trust Agreement" dated January 24, 2020, to wit, Joyce Eisen, Jonathan R. Miller, Scott A. Miller, Douglas S. Miller, and Jacqueline L. Feldbaum.

B.     "Communications" or "statements" mean any oral or written statement, dialogue, colloquy, discussion, conversation and any other transfer of thoughts or ideas between persons by means of documents and includes a transfer of data from one location to another by electronic or similar means.

C.     "Date" shall mean the exact date, including day, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

D.     "Decedent," "Settlor," or "Grantor," means Sydney Miller, deceased.

E.     "Document" means, without limitation, all paper documentation or electronically

stored information[1] – including writings, drawings, graphs, charts, photographs, sound recordings, video recordings, images, and other data or data compilations, internal and external e-mail, letters, Correspondence, communications, notes, notations, memoranda, invoices, workorders, calendars, schedules, books, records, all drafts and/or versions – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

       F.      "Estate" means the estate of Sydney Miller, unless otherwise specified.

       G.      "Lawsuit" means the above-styled action.

       H.      "Person," means any natural person or any entity, including without limitation any individual, firm, corporation, company, joint venture, trust, tenancy, association, partnership, business, agency, department, bureau, board, commission, or any other form of public, private or legal entity. Any reference herein to any public or private company, partnership, association, or other entity include such entity's subsidiaries and affiliates, as well as the present and former directors, officers, employees, attorneys, agents and anyone acting on behalf of, at the direction of, or under the control of the entity, its subsidiaries or its affiliates.

       I.      "Thing" or "item" includes documents and all three-dimensional objects of any kind including, but not limited to, samples, prototypes, parts, objects, mark-ups, displays, exhibits,

---

[1] The term "document" as it pertains to electronically stored information and/or computer records (ESI) includes but is not limited to, responsive documents on hard storage disks, jumpdrives, CD-ROMs, optical discs, backup drives, printer buffers, smart cards, memory calculators, pagers, personal digital assistants such as iPhone and/or Blackberry devices as well as external and/or internal e-mail and any attachments (whether server-based e-mail and/or Web-based email),electronic appointment books, cellular telephones, instant and/or SMS text messages, telephone conference call recordings, answering machine records, fax machine data and logs, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. In response to this request, ESI should be produced in native format in a reasonable readable format, clearly labeled as to the kind of software used to prepare, organize, and manipulate the data contained.

books, advertising, tape cartridges or cassettes or reels, computer disks, flash drives, and other storage media, containers, wrappers, and representations.

    J.      "Trust" means the Sydney Miller Revocable Living Trust Agreement dated October 12, 2005, without regard to any amendment by the First Amendment to Sydney Miller Revocable Trust Agreement dated January 24, 2020.

    K.      "2020 Amendment" means the First Amendment to Sydney Miller Revocable Trust Agreement dated January 24, 2020.

    L.      "Trustee" means any and all trustees of the Trust.

    M.      "Will" means the last will and testament of Sydney Miller.

    N.      "You" and "Your" mean the Plaintiff, Jonathan Miller, to whom this discovery request is addressed, including you and your agents, attorneys, and all other persons acting or purporting to act on your behalf.

    O.      "Relating to," "related to," "regarding" and "evidencing" mean to, directly or indirectly, refer to, reflect, concern, mention, evidence, describe, pertain to, arise out of or in connection with or in any way legally, logically, or factually be connected with the matter discussed.

    P.      "And" and "or" mean "and/or" and shall be read to encompass the broader of the two possible constructions and shall not be interpreted disjunctively so as to exclude any information or documents otherwise within the scope of any Request.

    Q.      Any pronouns used herein shall include and be read and applied as to encompass the alternative forms of the pronoun, whether masculine, feminine, neuter, singular or plural, and shall not be interpreted so as to exclude any information or documents otherwise within the scope of the Request.

    R.      For all terms that are not specifically defined in this section, the common dictionary definition and usage of the term should be applied as set forth in the Merriam-Webster dictionary or on www.dictionary.com.

3

## INSTRUCTIONS

1.      These Requests for Admissions are continuing in nature and the responses must be supplemented by you at such time in the future as any facts, information and documents discovered hereafter shall have been ascertained, and such supplemental responses shall be served upon the undersigned attorneys reasonably after such discovery. The original of the responses are to be served on Defendant's attorneys at the offices of Greenspoon Marder LLP. 200 East Broward Boulevard, Suite 1800, Fort Lauderdale, Florida 33301.

2.      If you assert that any information called for by these Requests for Admissions is protected against disclosure by the work product doctrine, attorney-client privilege, or other similar grounds, you shall provide the following information with respect to such information: (a) the author(s) or speaker, including their name and capacity or title; (b) subject matter of information; (c) the name and capacities of all recipients of the information; (d) all persons to whom the information was shared or explained; (e) the date the information was first known; (f) the source from which the information was derived; and (g) the nature of the privilege asserted or other basis upon which you contend that you are entitled to withhold the information.

3.      If you object to any portion of a Request for Admission, provide all information responsive to the portion to which you do not object.

## REQUESTS FOR ADMISSION

1.      Admit that in the dates surrounding January 24, 2020, Sydney Miller knew the nature of his bounty, i.e., knew accurately who the closest members of his family were.

2.      Admit that in the dates surrounding January 24, 2020, Sydney Miller knew the nature of his property.

3.      Admit that in the dates surrounding January 24, 2020, Sydney Miller generally understood the effect of creating a bequest in a last will and testament.

4.      Admit that in the dates surrounding January 24, 2020, Sydney Miller generally understood the effect of executing an amendment to his trust.

5.      Admit that in the dates surrounding January 24, 2020, Sydney Miller generally understood the effect of bequeathing $420,000 to Joyce Eisen in an amendment to his Trust.

6.      Admit that at no time between the years of 2016 through the date of his death was Sydney Miller under the care of a neurologist.

7.      Admit that Sydney Miller was never diagnosed with Alzheimer's Disease.

4

8.       Admit that Sydney Miller was never diagnosed with dementia.

9.       Admit that Sydney Miller and Joyce Eisen were girlfriend and boyfriend continuously from 2004 through July 15, 2022, when Sydney Miller died.

10.      Admit that Sydney Miller and Joyce Eisen resided together continuously for at least the last 14 years of Sydney Miller's life.

11.      Admit that Sydney Miller loved Joyce Eisen.

12.      Admit that Sydney Miller was grateful for the impact Joyce Eisen had on the last 19 years of his life.

13.      Admit that Sydney Miller was an attorney licensed in the state of New York beginning in 1958 until he retired.

14.      Admit that You are a licensed and practicing attorney.

15.      Admit that You are barred as an attorney in three U.S. states, specifically New York, New Jersey, and Pennsylvania.

16.      Admit that You regularly engage in litigation as part of your legal practice.

17.      Admit that You have experience litigating trust or estate matters prior to this lawsuit.

18.      Admit that before You served as Successor Trustee of the Trust, You had an understanding, as a legal matter, of what it means to be a fiduciary.

19.      Admit that before You served as Successor Trustee of the Trust, You understood that a trustee of a trust is in a fiduciary relationship to the beneficiaries of the trust.

20.      Admit that Sydney Miller felt distress regarding the sour relationship between You and Joyce Eisen up until the day he died.

21.      Admit that Sydney Miller felt distress regarding the sour relationship between Scott Miller and Joyce Eisen up until the day he died.

22.      Admit that Sydney Miller felt distress regarding the sour relationship between Douglas Miller and Joyce Eisen up until the day he died.

23.      Admit that Sydney Miller felt distress regarding the sour relationship between Jacqueline Feldbaum and Joyce Eisen up until the day he died.

24.      Sydney Miller requested that you agree to discharge Joyce Eisen's obligation to make monthly payments to You multiple times in the last five years of his life

5

25.     Admit that Sydney Miller owned a home in New York from prior to 2004 until sometime in 2021.

26.     Admit that You took or transferred from Defendant's home financial, tax, estate planning, or legal documents, including but not limited to account statements, regarding Defendant personally or Defendant's trust without her permission, authorization, or consent.

27.     Admit that one of Your siblings took or transferred from Defendant's home financial, tax, estate planning, or legal documents, including but not limited to account statements, regarding Defendant personally or Defendant's trust without her permission, authorization, or consent.

28.     Admit that someone other than one of Your siblings, acting on Your behalf, took or transferred from Defendant's home financial, tax, estate planning, or legal documents, including but not limited to account statements, regarding Defendant personally or Defendant's trust without her permission, authorization, or consent.

29.     Admit that You obtained from Defendant's home financial, tax, estate planning, or legal documents, including but not limited to account statements, regarding Defendant personally or Defendant's trust without her permission, authorization, or consent.

30.     Admit that You have no evidence that Defendant ever told Sydney Miller that she was impoverished.

31.     Admit that You have no evidence that Defendant ever told Sydney Miller that she was impoverished between January 1, 2018 and January 24, 2020.

32.     Admit that You have no evidence that Defendant ever told Sydney Miller that she was poor.

33.     Admit that You have no evidence that Defendant ever told Sydney Miller that she was poor between January 1, 2018 and January 24, 2020.

34.     Admit that You have no evidence that Defendant ever told Sydney Miller that she had a net worth of less than $1 million.

35.     Admit that You have no evidence that Defendant ever told Sydney Miller that she had a net worth of less than $1 million between January 1, 2018 and January 24, 2020.

36.     Admit that You have no evidence that Defendant ever told Sydney Miller that she was living on a fixed income.

6

37.    Admit that You have no evidence that Defendant ever told Sydney Miller that she was living on a fixed income between January 1, 2018 and January 24, 2020.

38.    Admit that You have no evidence that Defendant ever told Sydney Miller that she was living on a limited income.

39.    Admit that You have no evidence that Defendant ever told Sydney Miller that she was living on a limited income between January 1, 2018 and January 24, 2020.

40.    Admit that on October 12, 2005, you were appointed as Sydner Miller's Attorney-in-Fact pursuant to a "Durable Family Power of Attorney," with full authority to manage his money and assets if he were declared to be incompetent.

41.    Admit that on October 12, 2005, you were appointed as Sydner Miller's Attorney-in-Fact pursuant to a "Durable Medical Power of Attorney," with full authority to manage his medical affairs if he was unable to do so.

42.    Admit that You never acted as Sydney Miller's Attorney-in-Fact pursuant to the "Durable Family Power of Attorney."

43.    Admit that You never acted as Sydney Miller's Attorney-in-Fact pursuant to the "Durable Family Power of Attorney" in connection with the 2020 Amendment.

44.    Admit that You never acted to have Sydney Miller declared incompetent.

45.    Admit that You never acted to challenge the 2020 Amendment while Sydney Miller was alive.

46.    Admit that You never acted to report Defendant's alleged exploitation while Sydney Miller was alive.

47.    Admit that You never acted to report Defendant's alleged emotional abuse while Sydney Miller was alive.

48.    Admit that You never acted to report Defendant's alleged fraud while Sydney Miller was alive.

49.    Admit that You never acted to report Defendant's alleged undue influence over Sydney Miller while Sydney Miller was alive.

50.    Admit that You never acted to report Defendant's alleged duress over Sydney Miller while Sydney Miller was alive.

51.    Admit that except to request medical records, You never acted as Sydney Miller's Attorney-in-Fact pursuant to the "Durable Medical Power of Attorney."

52. Admit that You took no actions as Successor Trustee of the Trust.

53. Admit that You exercised no powers as Successor Trustee of the Trust.

54. Admit that You performed no duties as Successor Trustee of the Trust.

55. Admit that You did not provide any information regarding the Trust to all of the Beneficiaries during the time You were Successor Trustee.

56. Admit that You did not provide any information regarding the Trust to Defendant during the time You were Successor Trustee until after you received the Demand Letter sent by Defendant's attorney in February of 2023.

57. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to all of the Beneficiaries of the acceptance and Your full name and address.

58. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You gave the Beneficiaries other than You and Defendant notice of the acceptance and Your full name and.

59. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to Defendant of the acceptance and Your full name and address.

60. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to all of the Beneficiaries of the Trust's existence.

61. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You gave notice to all of the Beneficiaries other than You and Defendant of the Trust's existence.

62. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to Defendant of the Trust's existence.

63. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to all of the Beneficiaries of the identity of the settlor.

64. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You gave notice to all of the Beneficiaries other than You and Defendant of the identity of the settlor.

65. Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to Defendant of the identity of the settlor.

8

66.     Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to all of the Beneficiaries of the right to request a copy of applicable trust instruments.

67.     Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You gave notice to all of the Beneficiaries other than You and Defendant of the right to request a copy of applicable trust instruments.

68.     Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to Defendant of the right to request a copy of applicable trust instruments.

69.     Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to all of the Beneficiaries of the right to accountings.

70.     Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You gave notice to all of the Beneficiaries other than You and Defendant of the right to accountings.

71.     Admit that within sixty days after acceptance of the Successor Trustee position of the Trust, You did not give notice to Defendant of the right to accountings.

72.     Admit that when You were Successor Trustee, You did not provide any accountings of the Trust assets, liabilities, or holdings to all of the Beneficiaries.

73.     Admit that when You were Successor Trustee, You provided Trust accountings to all of the Beneficiaries other than You and Defendant.

74.     Admit that when You were Successor Trustee, You did not provide any accountings of the Trust assets or holdings to Defendant.

75.     Admit that when You were Successor Trustee, You received a request for an accounting of the Trust assets or holdings from Defendant.

76.     Admit that when You were Successor Trustee, You did not respond to Defendant's request for an accounting of the Trust assets or holdings with any such Trust accounting.

77.     Admit that as Successor Trustee You never told Defendant the value of the Trust's assets, liabilities, or holdings.

78.     Admit that as Successor Trustee You never told Defendant the value Sydney Miller's Estate.

9

79.     Admit that you did not provide a Trust Accounting to all of the beneficiaries at or near the time you resigned as Successor Trustee.

80.     Admit that you provided a Trust Accounting to all of the beneficiaries other than You and Defendant at or around the time you resigned as Successor Trustee.

81.     Admit that you did not provide a Trust Accounting to Defendant at or around the time you resigned as Successor Trustee.

82.     Admit that the Trust has made distributions to Beneficiaries other than Defendant.

83.     Admit that the Trust has made distributions to all Beneficiaries other than Defendant.

84.     Admit that the Trust has made distributions to You in your capacity as a Beneficiary.

85.     Admit that the only assets or holdings remaining in the Trust are the disputed funds designated for the Defendant under the 2020 Amendment.

86.     Admit that the vast majority of the assets or holdings remaining in the Trust are the disputed funds designated for the Defendant under the 2020 Amendment.

Dated: August 28, 2023.                   GREENSPOON MARDER LLP

                                          By: */s/ Elsa Van Gorp*
                                          ELSA VAN GORP, ESQUIRE
                                          Florida Bar No. 120527
                                          ROY TAUB, ESQUIRE
                                          Florida Bar No. 116263
                                          200 East Broward Boulevard, Suite 1800
                                          Fort Lauderdale, Florida 33301
                                          Telephone: 954-491-1120
                                          Facsimile:  954-333-4098
                                          elsa.vangorp@gmlaw.com
                                          roy.taub@gmlaw.com
                                          sara.austin@gmlaw.com
                                          cheryl.cochran@gmlaw.com

                                          *Attorneys for Defendant Joyce Eisen*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2023, the foregoing was served via e-mail and U.S. Mail to:

10

**JONATHAN MILLER, ESQUIRE**
**jonathan.miller@lawyer.com**
**100 Overlook Center, 2ⁿᵈ Floor**
**Princeton, NJ 08540**
**(605) 955-1226**

                                        /s/ Elsa Van Gorp
                                        ELSA VAN GORP, ESQUIRE
                                        Florida Bar No. 120527

11

Case 9:23-cv-80290-RLR   Document 26   Entered on FLSD Docket 09/28/2023   Page 71 of 84

# Exhibit 8

**jonathan.miller@lawyer.com**

| | |
|---|---|
| **From:** | Elsa Van Gorp <Elsa.VanGorp@gmlaw.com> |
| **Sent:** | Tuesday, August 29, 2023 5:00 PM |
| **To:** | Scott Miller |
| **Cc:** | {F15840128}.Active@gmlaw.imanage.work; Roy Taub; Jonathan Miller |
| **Subject:** | RE: Miller v. Eisen [IMAN-ACTIVE.FID15840128] |

**CONFIDENTIAL SETTLEMENT COMMUNICATIONS**

Dear Messrs. Miller,

We are in receipt of Jonathan Miller's offer to cease pursuing pending claims causing Scott Miller, as Trustee, to distribute the $420,000 gift to Joyce Eisen pursuant to the Sydney Miller Revocable Trust Agreement as Amended, along with execution of general releases by all parties (Jonathan Miller, Scott Miller individually, Scott Miller as Trustee). Because Ms. Eisen was forced to retain legal counsel and incur legal fees to defend herself in Federal Court from the frivolous and scurrilous lawsuit alleging fraud, duress, undue influence, etc. against the man she loved and cared for 19 years and because under the law Ms. Eisen is entitled to attorney's fees as the prevailing party and for benefitting the Trust by following and enforcing the true testamentary intent of Sydney Miller, Ms. Eisen submits the following counteroffer subject to a fully negotiated and written stipulation:

1. Jonathan Miller will take steps necessary to voluntarily dismiss his Complaint.

2. Scott Miller will file a consent in his individual capacity and in his capacity as Trustee. The consent will include a statement that the Trustee conferred with all beneficiaries and all beneficiaries consented to him filing the consent on their behalf as Trustee.

3. Scott Miller, as Trustee, will distribute to Ms. Eisen the $420,000 gift that she in entitled to under the First Amendment from 2020 (and the prior Addendum from 2019) by wire pursuant to instructions to be provided upon agreement to this counteroffer.

4. In addition, Scott Miller will also distribute the value of Ms. Eisen's attorney fees as of the date of agreement by wire pursuant to instructions to be provided upon agreement to this counteroffer to reimburse her for her attorney fees incurred to defend this lawsuit and following and enforcing the true testamentary intent of Sydney Miller. We can provide specifics as to the attorney fees if there is agreement, but presently fees for work done on Ms. Eisen's behalf in this case total between $100,000 and $110,000. Our bills are reviewed and finalized after the close of each month.

5. The stipulation will not be confidential, but rather will be filed with the court.

6. All parties – Jonathan Miller, Scott Miller individually, Scott Miller as Trustee, Joyce Eisen – will sign general releases in relation to Sydney Miller's estate and trust. Scott Miller's as Trustee will include a statement that the Trustee conferred with beneficiaries, Douglas Miller and Jaclyn Feldbaum, who agreed to be bound by the releases through the Trustee.

Furthermore, regardless of settlement, **we demand** on behalf of Ms. Eisen, a qualified beneficiary, **that she be provided with the following information** to which she is entitled and which you have a duty to provide **pursuant to Fla. Stat. 736.0813 and 736.08135 within 14 days**:

1. **A full trust accounting** (including without limitation the assets and liabilities of the Trust). One should have been provided when Jonathan resigned as Trustee, and one must be provided at least annually. It has been more than one year since Sydney Miller's death which cause the Trust to become irrevocable.

2. **Particulars relating to the administration of the trust.**

Please respond to Ms. Eisen's counteroffer as soon as possible to prevent unnecessary additional legal fees and provide the Accounting and information relating to the administration of the Trust within 14 days.

Take care,
Elsa



Elsa Van Gorp, Esquire
Litigation Associate – Wills, Trusts & Estates Practice Group
600 Brickell Ave, Suite 3600
Miami, Florida 33131
Brickell: (305) 789-2770
Fort Lauderdale: (954) 491-1120
Direct: (305) 789-2759
Extension: 3359
Elsa.VanGorp@gmlaw.com
www.gmlaw.com

# Exhibit 9

**jonathan.miller@lawyer.com**

| | |
|---|---|
| **From:** | Elsa Van Gorp <Elsa.VanGorp@gmlaw.com> |
| **Sent:** | Friday, September 1, 2023 11:16 AM |
| **To:** | jonathan.miller@lawyer.com; Roy Taub |
| **Cc:** | 'Scott Miller'; {F15840128}.Active@gmlaw.imanage.work |
| **Subject:** | RE: Miller v Eisen - pre-filing conference [IMAN-ACTIVE.FID15840128] |

We cannot agree to the stipulation you drafted. We will discuss the options with Ms. Eisen early next week and get back to you.

Take care,
Elsa

# GreenspoonMarder ⬤
CELEBRATING FORTY YEARS TOGETHER

Elsa Van Gorp, Esquire
Litigation Associate - Wills, Trusts & Estates Practice Group
600 Brickell Ave, Suite 3600
Miami, Florida 33131
Brickell: (305) 789-2770
Fort Lauderdale: (954) 491-1120
Direct: (305) 789-2759
Extension: 3359
Elsa.VanGorp@gmlaw.com
www.gmlaw.com

**From:** jonathan.miller@lawyer.com <jonathan.miller@lawyer.com>
**Sent:** Wednesday, August 30, 2023 11:51 PM
**To:** Roy Taub <Roy.Taub@gmlaw.com>
**Cc:** Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>; 'Scott Miller' <scott@samlawnyc.com>
**Subject:** RE: Miller v Eisen - pre-filing conference

Attached. if acceptable we can fix the signature block and sign. Unless I am missing something, you already rejected this.


Jonathan R. Miller, Esq.
*(Admitted in N.Y., N.J. & Pa.)*

*This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. Unauthorized distribution of this email is strictly prohibited. Information contained in this communication may be confidential and may be subject to the attorney-client privilege.*

**From:** Roy Taub <Roy.Taub@gmlaw.com>
**Sent:** Wednesday, August 30, 2023 1:12 PM
**To:** Jonathan <jonathan.miller@lawyer.com>
**Cc:** Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>; 'Scott Miller' <scott@samlawnyc.com>
**Subject:** RE: Miller v Eisen - pre-filing conference

Yes, please send over the proposed stip when you have a chance.  Thanks.



Roy Taub
Greenspoon Marder LLP
Partner
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Direct Phone Number: (954) 527-6231
Office Phone Number: (954) 491-1120
roy.taub@gmlaw.com
www.gmlaw.com
[facebook.com]  [linkedin.com]  [twitter.com]

**From:** Jonathan <jonathan.miller@lawyer.com>
**Sent:** Wednesday, August 30, 2023 1:10 PM
**To:** Roy Taub <Roy.Taub@gmlaw.com>
**Cc:** Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>; 'Scott Miller' <scott@samlawnyc.com>
**Subject:** RE: Miller v Eisen – pre-filing conference

Roy,

This is not complicated. A Rule 41 stip of dismissal with prejudice and without costs or fees. If need be I will send over the proposed stip when I get back to my office later today.

Jonathan
On Aug 30, 2023, at 1:03 PM, Roy Taub <roy.taub@gmlaw.com> wrote:

Jonathan,

You mention several concepts in your e-mail.  Please send over the proposed stipulation of dismissal with prejudice so that we can better consider what you have in mind.

Thanks,

Roy Taub
Greenspoon Marder LLP
Partner
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Direct Phone Number: (954) 527-6231
Office Phone Number: (954) 491-1120
roy.taub@gmlaw.com
www.gmlaw.com
[facebook.com]  [linkedin.com]  [twitter.com]

**From:** jonathan.miller@lawyer.com <jonathan.miller@lawyer.com>
**Sent:** Tuesday, August 29, 2023 5:50 PM
**To:** Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>; Roy Taub <Roy.Taub@gmlaw.com>
**Cc:** 'Scott Miller' <scott@samlawnyc.com>
**Subject:** Miller v Eisen - pre-filing conference

Elsa and Roy,

Under the circumstances it seems best to proceed under Rule 41. The local rules appear to require a pre-filing conference, either orally or in writing. Accordingly, please confirm whether Ms Eisen agrees to a voluntary Rule 41 dismissal with prejudice. Based on her response to my settlement proposal from 8/21 (which was a Rule 41 stip of dismissal with prejudice and with mutual releases), I assume that Ms Eisen will raise the issue of attorney's fees. Separate from that issue, please advise re the Rule 41 dismissal — i.e., whether the motion can proceed on consent but for the issue of legal fees.

Thanks,

Jonathan R. Miller, Esq.
**The Law Firm of Jonathan R. Miller**
Tel. 609-955-1226
Fax 609-964-1026
jonathan.miller@lawyer.com
http://jmillerlawfirm.com [jmillerlawfirm.com]

*Main Office:*
100 Overlook Center, 2nd Floor
Princeton, NJ 08540

*N.Y. Office:*
300 Cadman Plaza, 12th Floor
Brooklyn, NY 11201

*This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. Unauthorized distribution of this email is strictly prohibited. Information contained in this communication may be confidential and may be subject to the attorney-client privilege.*

GREENSPOON MARDER LLP LEGAL NOTICE
The information contained in this transmission may be attorney/client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail.

Unless specifically indicated otherwise, any discussion of tax issues contained in this e-mail, including any attachments, is not, and is not intended to be, "written advice" as defined in Section 10.37 of Treasury Department Circular 230.

A portion of our practice involves the collection of debt and any information you provide will be used for that purpose if we are attempting to collect a debt from you.

# Exhibit 10

q5-|36

f 106

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-80290-Rosenberg/Reinhart

JONATHAN MILLER,

              Plaintiff,

     v.

JOYCE EISEN, and
SCOTT MILLER, as Trustee of the Sydney
Miller Trust,

              Defendants.

### STIPULATION OF VOLUNTARY DISMISSAL WITH PREJUDICE

Pursuant to Fed. R. Civ. P. 41(a)(1), this matter is hereby dismissed with prejudice and
without costs or fees to any party.





Jonathan Miller, *pro se*
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. (609) 955-1226
Fax (609) 964-1026
Email: jonathan.miller@lawyer.com

1

v.230830.2343

9/28/2023, 10:22 AM

# Exhibit 11

**jonathan.miller@lawyer.com**

| | |
|---|---|
| **From:** | Roy Taub <Roy.Taub@gmlaw.com> |
| **Sent:** | Wednesday, September 13, 2023 4:02 PM |
| **To:** | jonathan.miller@lawyer.com; Elsa Van Gorp |
| **Cc:** | 'Scott Miller'; {F15840128}.Active@gmlaw.imanage.work |
| **Subject:** | RE: Miller v Eisen – pre-filing conference [IMAN-ACTIVE.FID15840128] |

I believe Elsa asked you to send it over so we can decide if it can be filed as a consented to motion.



Roy Taub
Greenspoon Marder LLP
Partner
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, FL  33301
Direct Phone Number: (954) 527-6231
Office Phone Number: (954) 491-1120
roy.taub@gmlaw.com
www.gmlaw.com

**From:** jonathan.miller@lawyer.com <jonathan.miller@lawyer.com>
**Sent:** Wednesday, September 13, 2023 3:55 PM
**To:** Roy Taub <Roy.Taub@gmlaw.com>; Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>
**Cc:** 'Scott Miller' <scott@samlawnyc.com>; {F15840128}.Active@gmlaw.imanage.work
**Subject:** RE: Miller v Eisen - pre-filing conference [IMAN-ACTIVE.FID15840128]

Understood, but I am having trouble understanding how the requested accounting is a sticking point as regards my motion?

Jonathan R. Miller, Esq.
*(Admitted in N.Y., N.J. & Pa.)*

*This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. Unauthorized distribution of this email is strictly prohibited. Information contained in this communication may be confidential and may be subject to the attorney-client privilege.*

**From:** Roy Taub <Roy.Taub@gmlaw.com>
**Sent:** Wednesday, September 13, 2023 3:51 PM
**To:** jonathan.miller@lawyer.com; Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>
**Cc:** 'Scott Miller' <scott@samlawnyc.com>; {F15840128}.Active@gmlaw.imanage.work
**Subject:** RE: Miller v Eisen - pre-filing conference [IMAN-ACTIVE.FID15840128]

Hi Jonathan,

The current Trustee is on this e-mail thread, so he received the request for an accounting from Mrs. Eisen's representatives.  We await his response.



Roy Taub
Greenspoon Marder LLP
Partner
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Direct Phone Number: (954) 527-6231
Office Phone Number: (954) 491-1120
roy.taub@gmlaw.com
www.gmlaw.com

[facebook.com] [linkedin.com] [twitter.com]

**From:** jonathan.miller@lawyer.com <jonathan.miller@lawyer.com>
**Sent:** Wednesday, September 13, 2023 3:50 PM
**To:** Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>; Roy Taub <Roy.Taub@gmlaw.com>
**Cc:** 'Scott Miller' <scott@samlawnyc.com>; {F15840128}.Active@gmlaw.imanage.work
**Subject:** RE: Miller v Eisen - pre-filing conference [IMAN-ACTIVE.FID15840128]

I am no longer Trustee, but Ms Eisen's interest is limited to $420,000, which has been set aside. So, how does an accounting for the Trust as a whole relate to my motion?


Jonathan R. Miller, Esq.
*(Admitted in N.Y., N.J. & Pa.)*

*This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. Unauthorized distribution of this email is strictly prohibited. Information contained in this communication may be confidential and may be subject to the attorney-client privilege.*

**From:** Elsa Van Gorp <Elsa.VanGorp@gmlaw.com>
**Sent:** Wednesday, September 13, 2023 3:23 PM
**To:** jonathan.miller@lawyer.com; Roy Taub <Roy.Taub@gmlaw.com>
**Cc:** 'Scott Miller' <scott@samlawnyc.com>; {F15840128}.Active@gmlaw.imanage.work
**Subject:** RE: Miller v Eisen - pre-filing conference [IMAN-ACTIVE.FID15840128]

It is very difficult to make an informed decision without knowing the assets and liabilities of the Trust. Ms. Eisen is entitled to an accounting, and one has been requested on at least two occasions. Please provide an accounting and information as to the administration and distribution of the Trust.

Additionally, we will need to see the language of the motion for voluntary dismissal with prejudice before we can agree so please send it over for our review.

Take care,
Elsa

Greenspoon Marder

Elsa Van Gorp, Esquire
Litigation Associate - Wills, Trusts & Estates Practice Group
600 Brickell Ave, Suite 3600
Miami, Florida 33131
Brickell: (305) 789-2770

9/28/2023, 10:22 AM

Fort Lauderdale: (954) 491-1120
Direct: (305) 789-2759
Extension: 3359
Elsa.VanGorp@gmlaw.com
www.gmlaw.com